J-A22032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.E.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| R.A.G., | |
| Appellee | No. 251 MDA 2015 |

Appeal from the Order Entered January 9, 2015
in the Court of Common Pleas of York County
Civil Division at No.: 2011-FC-000111-03

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED SEPTEMBER 08, 2015**

Appellant, D.E.G. (Father), appeals from the order refusing his petition to relocate and assume primary custody of his daughter, M.M.G. (Child). The order continued the existing shared physical custody order.  Child continues to live with Appellee, her mother, R.A.G. (Mother).  The order also provided that if Father relocated, as he intended, Mother would have primary physical custody during the school year, and Father would have primary physical custody during the summer, with periods of visitation.  Father alleges various errors of law and abuse of discretion, as well as asserting the trial court's misapprehension of several material facts.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Father and Mother married in July of 2004. Child was born in 2005. In January of 2011, Father filed for divorce and sought primary physical custody of Child. Pending a hearing, the trial court awarded joint legal custody with physical custody for Father from Thursday through Saturday one week and Friday through Sunday on alternating weeks. In August of 2011, Father moved from New Cumberland, Pennsylvania, and rented an apartment in Dover, Pennsylvania, to be closer to Child and her school.

On October 18, 2011, following a hearing, the trial court awarded the parties shared legal and physical custody of Child on a biweekly schedule of Sunday to Sunday with an exchange time of 7 p.m. The trial court granted a divorce to the parties by decree entered on January 22, 2014.

Also in January of 2014, Mother and Child moved in with Mother's fiancé, a restaurateur. Mother and the fiancé have a son, born in September of 2014. At the time of the hearing, Mother was also expecting a second child with her fiancé.

Father is a patent attorney who works for a company in the York area which is gradually being sold off division by division. There is no dispute that his job will probably end in a year or two. Father thinks there may be an opportunity for him to open a law practice in Windber, PA.[1] He also is

---

[1] On April 12, 2014 Father married his current wife. In 2013, they had purchased the house in Windber, Pennsylvania, near Johnstown, where she
*(Footnote Continued Next Page)*

considering the possibility of employment in Pittsburgh, some seventy-eight miles west of Windber. Father has family in Pittsburgh.

Father filed his Notice of Proposed Relocation on March 4, 2014. Mother filed her counter-affidavit on March 14, 2014. The trial court held its hearing on this matter on December 12 and December 22, 2014.

There is no dispute that Mother and Father have a "high conflict" relationship in which "[c]ommunication is strained[.]" (Trial Court Opinion, 1/09/15, at 7, 12; **see also** Father's Brief, at 5). These difficulties carry over into parenting, where Father may be seen to have a somewhat authoritarian approach to raising Child, while Mother by comparison, may be considered more permissive. The difference in approaches takes on added significance because Child has had adjustment problems, and undergoes professional counseling at school to address past behavioral issues.

Father accuses Mother of using drugs, which she denies, except for admitting past marijuana use (which Father recorded on videotape). He also accuses Mother of trying to subvert his relationship with Child, *e.g.*, by disparaging him (and his new wife) in front of Child.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

has family in the area. Windber is 145 miles west of York, about a two-and-a-half hour drive away from Dover.

At the hearing Father indicated his intention to live in Windber with his new wife, whether or not his petition to relocate was approved.[2]  Father also keeps the Dover apartment near his job and near Child.  The court entered its decision and order of custody on January 9, 2015.  Father timely appealed.[3]

Father presents the following questions for our review:

(A) Did the trial court err as a matter of law or abuse its discretion by refusing and failing to award [Father] primary physical custody of [ ] Child?

>   (A)(1) Did the trial court err as a matter of law or abuse its discretion by substituting its own best interest of the child guide for the statutory best interest of the child guide?

>   (A)(2) Did the trial court err as a matter of law or abuse its discretion by not giving added weight to safety factors, both harmful to Child and beneficial to Child, in its analysis of the best interest of the child factors and in its analysis of the relocation factors?

>   (A)(3) Did the trial court err as a matter of law or abuse its discretion by ordering default joint physical custody in a

---

[2] Father works several days a week at the office and the rest of the time works from home in Windber.

[3]  Father's notice of appeal and statement of errors complained of on appeal are entered on the docket of the trial court on February 5, 2015, and both are time-stamped February 5, 2015.  **See** Pa.R.A.P. 905(a)(2), Pa.R.A.P. 1925(a)(2)(i).  In an apparent oversight, the trial court entered an order on February 10, 2015, directing Father to file his concise statement of errors complained of on appeal.  We deem the filed statement compliant.  The trial court filed a Rule 1925(a) opinion on February 13, 2015, referencing its decision and order filed January 9, 2015.  **See** Pa.R.A.P. 1925(a).  For convenience, all of our citations to the trial court's opinion refer to the decision and order of January 9, 2015.

high-conflict custody dispute where Mother refuses to co-parent?

(A)(4) Did the trial court err as a matter of law or abuse its discretion by relying on material facts in its opinion that are not supported in the record, misapplying material factors, and not addressing all of the best interest and relocation factors?

(B) Did the trial court err as a matter of law or abuse its discretion by refusing and failing to permit Father to relocate with Child to Windber, Pennsylvania, based on the distance between Dover, Pennsylvania, and Windber, Pennsylvania?

(Father's Brief at 5-6) (emphasis and most capitalization omitted).

Our scope and standard of review is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated,

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003) (citations omitted).

Additionally,

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting *Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994)).

In this appeal, Father first asserts that "[t]he [t]rial [c]ourt erred as a matter of law or abused its discretion by using overly narrow best interest of the child guides." (Father's Brief, at 13). According to Father:

> The trial court indicates that it does not know if the 23 Pa.C.S.A. §5328(a) best interests of the child factors should be considered before or after the 23 Pa.C.S.A. §5337(h) relocation factors. The trial court ultimately concluded, however, 'In this particular case, the [c]ourt believes the order of deciding makes no difference because Father has declared he is relocating regardless.' [Trial Ct. Op., 1/9/15, at 5.]
>
> The trial court then treats this controversy as a relocation case. We know this because the very first sentence of the [t]rial court's opinion is, 'This is a relocation case coupled with a modification request.' Second, the trial court spends at least two entire pages of its opinion explaining why relocation is not in the best interest of the Child, but essentially dispenses with the best interest of the Child with a single sentence: 'Initially, we note that we would not be inclined to modify custody from its present week on, week off circumstance.'

(*Id.*) (record citations and most capitalization omitted).

Father cites to the record in the first paragraph above but fails to quote the statement his first citation refers to, and he gives an incomplete quote in his second paragraph. The first citation is to a statement the trial court made at the hearing on this matter:

> It occurs to the [c]ourt there is some confusion in the unreported opinions of the Superior Court addressing [the] mechanics of deciding relocation cases. At one point, it was thought that we were to first decide the custody issue and then decide the relocation issue. There apparently is a conflicting decision in the Superior Court saying essentially decide the relocation issue first and then determine the custody after, with an appropriate schedule for partial physical custody.

And finally, there is an under [sic] [c]ourt opinion where the [t]rial [c]ourt did not differentiate in a step analysis; *i.e.*, relocation first, then custody, or custody first and then relocation, but combined everything.

(N.T. Hearing, 12/12/14, at 9-10).

Father takes his next quote from the trial court's opinion. We quote it here in the full context of the paragraph in which it appears:

The issues presented in a joint stipulation are 1) should the [c]ourt modify the [o]rders to grant primary custody of [Child] to one of the parties and partial physical custody to the other party; 2) what is an appropriate partial physical custody schedule for the non-custodial parent; 3) should Father be granted the right to relocate with [Child] to Windber, PA. Counsel could not agree on whether the modification must be considered first before considering relocation. **In this particular case, the [c]ourt believes the order of deciding makes no difference because Father has declared he is relocating regardless.**

(Trial Ct. Op., at 5) (emphasis provided by Father).

Father relies on these quotes from the trial court, and this Court's decisions in **Collins v. Collins**, 897 A.2d 466 (Pa. Super. 2006), *appeal denied,* 903 A.2d 1232 (Pa. 2006), and **S.J.S. v. M.J.S**, 76 A.3d 541 (Pa. Super. 2013), to conclude that the trial court, "abused its discretion by erring as a matter of law by impermissibly using its own views of relocation and custody as its best interest of the child guides." (Father's Brief, at 14).[4]

_____

[4] We note that the facts of **Collins** and **S.J.S.** differ from the case before us insofar as, in both cases, there was no order of custody in place, as there was here, when the respective trial courts considered requests for relocation.

In **Collins**, which was decided before our Legislature enacted the statutory custody factors, this Court stated:

> [W]hen the [trial] court fashions an initial custody order under circumstances where one parent wishes to relocate, the relocating parent does not have a greater burden of proof with regard to establishing the best interest of the child than does the parent who does not intend to move. The focus of the [trial] court must be on determining which parent and which living situation provides a familial setting that better serves the children's best interests.

**Collins**, **supra** at 472 (citations omitted).

In **S.J.S.**, decided after the statutory factors were enacted, this Court found "no error" where the trial court, "combin[ed] the considerations [of the custody and relocation factors] and render[ed] an order that awarded primary custody contingent on Mother's ultimate decision on where she would reside." **S.J.S.**, **supra** at 549.

Here, the trial court began its opinion by stating, correctly, "This is a relocation case coupled with a modification request." (Trial Ct. Op., at 1). In paragraph eight of Father's proposed notice of relocation, he requests a revised custody schedule that would provide visitation for Mother on alternating weekends during the school year, and provide for shared weekly custody during the summer if the trial court were to grant him permission to relocate with Child.

After reciting its findings of the facts of the case, the trial court then discusses each of the statutory custody factors and each of the statutory relocation factors. The trial court begins its analysis by stating:

- 9 -

> We now come to our analysis of the evidence in light of the factors above referenced in considering what is in [Child's] best interest. Initially, we note that we would not be inclined to modify custody from its present week on, week off circumstance. We also note that Father is relocating regardless of whether he receives permission or not. In any event, after weighing all the relocation factors, we are not persuaded that it is in [Child's] best interests to move.

(*Id.* at 10).

In his brief, Father complains that the trial court "essentially dispenses with the best interest of the Child with a single sentence: 'Initially, we note that we would not be inclined to modify custody from its present week on, week off circumstance.'" (Father's Brief at 13).

Father does not explain how this statement demonstrates that the trial court is dispensing with or otherwise failing to consider the best interests of the child standard. We fail to see that it does. In context, this is no more than a simple statement that, after examining the custody and relocation factors, the trial court has reached the conclusion that the current custody order is still an appropriate one.

In fact, following its analysis of how it reached this conclusion, the trial court reiterates on page 13 of its opinion, "Should Father remain in the York area, in his Dover apartment or elsewhere, the existing Shared Custody Order will be in effect." (Trial Ct. Op., at 13).

The trial court order also provides that, should Father relocate, Mother will have primary physical custody of Child during the school year, with a

schedule of visitation for Father, and that the parties shall share custody over the summer on a weekly schedule. (*See id.* at 13-14).

Our examination of the record reveals that the trial court neither erred nor abused its discretion in the way it analyzed the custody and relocation factors. It is obvious from our analysis that the focus of the trial court was on "determining which parent and which living situation provide[d] a familial setting that better serve[d] [Child's] best interests." *Collins*, *supra*, at 472 (citations omitted).

In addition, the trial court did not err or abuse its discretion when it considered the custody and relocation factors together and issued an order that made physical custody contingent on where Father chose to reside. *See S.J.S.*, *supra* at 549.

We find no evidence at all to support the claim that the trial court "abused its discretion by erring as a matter of law by impermissibly using its own views of relocation and custody as its best interest of the child guides." (Father's Brief, at 14). Father's first issue is without merit.

In his second issue, Father complains that the trial court erred or abused its discretion by not giving "added weight to safety factors." (Father's Brief, at 5, 18). We disagree.

Specifically, Father complains that the trial court abused its discretion in its consideration of custody factor eight, the attempts of a parent to turn the child against the other parent, and relocation factor five, whether there

is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party. (*See* Father's Brief, at 18-25).

In support of his claim, Father presents numerous citations to the record which, he argues, demonstrate that Mother has consistently attempted to alienate Child from him. Father also includes many citations to our caselaw to support his claim. But those cases, at most, do no more than support the proposition that a child's safety must be taken into account when considering custody and relocation. Father fails to tell us how any one of his citations supports his contention that the trial court improperly applied the law in this case.

Despite an explicit denial, (*see* Father's Brief, at 11), Father asks us in effect, to re-examine the evidence and reach a conclusion different from that reached by the trial court. This we may not do. We must accept the trial court's findings that are supported by competent evidence of record, and **we defer to the trial court on issues of credibility and weight of the evidence**. "[**I**]**f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result**." *In re Adoption of T.B.B.*, *supra* at 394 (emphasis added).

On considering custody factor eight, the attempts of a parent to turn the child against the other parent, the trial court stated:

> Factor 8: there is testimony that Mother has referred to Father or [Stepmother] as a dirt bag and a liar. There is scant

testimony that either parent has overtly and directly attempted to alienate the other parent. However, Dr. Lofas reports 'many incidences' of Mother attempting to create misgivings between Father and [Child] bad mouthing and pulling [Child] away from Father. She opines [Child's] outbursts and her oppositional behavior are symptomatic of her frustration of being torn between Mother and Father. It is beyond question this is a high-conflict case with parents having a totally different parenting approach.

(Trial Ct. Op., at 6-7).

We have reviewed the trial court's findings in light of the record in this matter and are satisfied that, taken as a whole, the evidence supports the trial court's findings and its decision to award primary physical custody to Mother, should Father decide to relocate to Windber, Pennsylvania. **See In re Adoption of T.B.B.**, **supra** at 394.

We understand Father's preferences and appreciate that his "high conflict" relationship with Mother has been acrimonious. But a high conflict relationship between the parents, without more, does not create a safety issue for the child. To the contrary, Father mis-reads factor eight of the child custody factors, which provides for consideration of "[t]he attempts of a parent to turn the child against the other parent, **except** in cases of domestic violence **where reasonable safety measures are necessary** to protect the child from harm." 23 Pa.C.S.A. § 5328(a)(8) (emphases added).

Father offers no pertinent authority in support of his attempt to conflate a recitation of acrimonious incidents between the parents with a

*bona fide* safety issue for Child. The safety issue exception in factor eight does not apply.

The denial of Father's petition to relocate and modify custody, even assuming a high conflict relationship, does not prove trial court error, or abuse of discretion, particularly because under our standard of review we defer to the trial court's assessments of credibility and weight of the evidence which find support in the record. Father's second issue does not merit relief.

In his third issue on appeal, Father assigns error to the trial court's order awarding "default joint physical custody in a high-conflict custody dispute where Mother refuses to co-parent[.]" (Father's Brief, at 5). We disagree.

Specifically, Father argues:

Father and Mother fail the co-parenting element (4) of the **B.C.S.** test, [**B.C.S. v. J.A.S.**, 994 A.2d 600, 603 (Pa. Super. 2010),] because Mother cannot isolate her personal conflicts from her role as a parent. Despite these findings, the [t]rial [c]ourt concludes, "Initially, we note that we would not be inclined to modify custody from its present week on, week off circumstance." This is an error of law.

(Father's Brief, at 28) (record citations omitted).[5]

In **B.C.S.**, this Court stated:

---

[5] While inartfully drafted, Father's brief has reference to the fourth element, "a minimal degree of cooperation between the parents must be possible[,]" cited in **B.C.S.**, *supra* at 603 (citation omitted).

Among the factors which must be considered in awarding shared custody are the following: (1) both parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; **(4) a minimal degree of cooperation between the parents must be possible.**

*Id.* at 602-03 (emphasis added). The *B.C.S.* Court explained:

A minimal degree of cooperation does not 'translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that Children be spared whatever resentments and rancor the parents may harbor.'

*Id.* at 603 (citation omitted)*.*

Father misreads our law by confusing parenting style with the ability of parents to cooperate. Factor four of the *B.C.S.* test requires only a "minimal degree of cooperation," not complementary parenting styles.

Our examination of the record reveals that, even though the parties have very different parenting styles, and even though this is a high conflict case, the parties have been able to set aside their differences and cooperate with each other when it comes to Child and her well-being. Both parties provided testimony that they routinely participate jointly in medical, therapist, and parent/teacher meetings.

Specifically, the parties were able to agree on Child's summer day care and after school programs. (*See* N.T. Hearing, 12/12/14, at 300). They were able to agree jointly on a pediatrician for Child. (*See id.* at 329). They

- 15 -

were able to agree on a behavioral plan with Child's teacher. (*See id.* at 320). The parties agreed that Child lacked the appropriate organization skills for her age and jointly worked out a check-list program with her teacher. (*See id.* at 316).

Both agreed that it would not be in Child's best interest to be examined by a psychiatrist because neither wanted her medicated. (*See id.* at 328). Mother testified that she realized her relationship with Father was not strong, but that they were able to put aside their feelings toward one another and communicate effectively about Child and her needs. (*See id.* at 311-12). Father testified that when he is unable to exercise custody due to employment obligations, he and Mother have been able to communicate and work out an alternate custody schedule. (*See id.* at 121-22).

Our review of the record supports the trial court's decision that the parties are capable of a sufficient degree of cooperation to satisfy the requirement of factor four in *B.C.S.*, *supra*. We discern no trial court error or abuse of discretion. Father's third issue does not merit relief.

In his fourth issue, Father complains, "The [t]rial [c]ourt made several errors of fact in its [o]pinion. These errors contributed to a decision that does not reflect the best interest of the Child." (Father's Brief, at 29; *see id.* at 29-35). We disagree.

Father first claims that the trial court made a factual error when it stated, "[Stepmother] states she has been working with children since 2005,

including performing functional behavioral assessments for children for an insurance company." (Father's Brief, at 29-30 (quoting Trial Ct. Op., at 2)).

This is not a misstatement of fact. When Father's counsel was eliciting Stepmother's qualifications to testify regarding Child he questioned her about her employment. She stated plainly that her work included performing functional behavioral assessments (FBA) of children for insurance companies.

> Q. Now, can you tell me that you—I believe you stated as part of your employment that you conducted functional behavioral assessments, or an FBA. Can you tell me what an FBA is?
>
> A. An FBA is—it's usually sixteen to twenty hours are prescribed by a psychologist, or the insurance company requests it because a kid is in treatment for a while, and they want to see why isn't this child getting better.

(N.T. Hearing, 12/12/14, at 440-41).

The trial court's use of the phrase "an insurance company" might lead one to believe that Stepmother was employed by an insurance company while her answer indicates that she works at the request of persons or entities including insurance companies. Stepmother apparently works as an independent contractor rather than an employee. The distinction is trivial and irrelevant to any valid issue in the appeal. The material fact in this instance is that Stepmother does FBA's of children. Who she does them for is not material.

Father continues in his brief with a discussion of Stepmother's duties and qualifications, a discussion that is not material to his complaint about material facts.

Father next complains that the trial court made a factual error when it stated, "The [t]rial [c]ourt further concludes that '[Stepmother] believes [the Child] has Pervasive Defiance Disorder not otherwise specified (PDDNOS) which is a 'catch all' for autism." (Father's Brief, at 31) (record citations omitted).

At the hearing, Stepmother testified that Child was diagnosed with, "Pervasive developmental disorder, not otherwise specified. It's a catchall diagnosis when a child doesn't meet the criteria for actual autism spectrum diagnosis." (N.T. Hearing, 12/12/14, at 476).

According to Father, "[T]he [t]rial [c]ourt confuses Pervasive Developmental Disorder NOS (PDDNOS) and Oppositional Defiance Disorder (ODD). PDD-NOS is an autism spectrum disorder. [Trial Ct. Op., at 1]." (Father's Brief, at 32) (emphasis and record citation omitted). He then concludes that these errors of fact "lead the [t]rial [c]ourt to improperly conclude that the Child is a 'special needs' child. This conclusion is not supported by the record and is an abuse of discretion." (*Id.*).

Father, however, fails to tell us where the trial court reaches the conclusion that Child is a "special needs" child. Our review of the record reveals two references in the trial court's opinion. The first is the trial

court's finding as to factor ten of the custody factors, "Factor 10: each parent in their own way will attend to [Child's] daily physical, emotional, developmental, educational and special needs."  The second is the trial court's finding as to relocation factor two, "Factor 2: [Child] in fourth grade, developing as a fourth grader and may be considered a special needs child. Father wants some additional testing for ODD and ADHD.  Mother disagrees [believing] any further testing is unnecessary.  It is clear [Child] had behavioral issues in third grade in school but appears to be doing better this year."  (Trial Ct. Op., at 9).

Father argues, "This conclusion is not supported by the record and is an abuse of discretion."  (Father's Brief, at 32).  Father then explains that Child is not a special needs child because, "The Child has not had an IEP [individualized education plan] since 2012 and the Child stopped receiving wraparound services in 2012.  The Child only has a Chapter 15 plan for occupational therapy issues resulting from the Child's premature birth." (*Id.*).

This may all be true, but Father fails to explain how a finding by the trial court that Child was a special needs child would affect the validity of the trial court's decision and order regarding custody and relocation.

Father concludes his argument on this issue by complaining:

> 23 Pa. C.S.A. §§5328(a)(16) and 5337(h)(10) were not addressed in the [t]rial [c]ourt's [o]pinion.  It is an error of law not to address all of the §§5328(a) and 5337(h) factors.  *B.K.M. v. J.A.M.,* 20 Pa. Super. 156, 50 A.3d 168, 172-75 (Pa. Super.

- 19 -

2012). The scope of review is the broadest type and the standard of review is abuse of discretion. *C.R.F.* supra. When addressing this issue, §5328(a)(16) should be ruled [sic] to include the question, "Who is the better parent?" This question is conspicuously absent in the statutory factors.

(Father's Brief, at 34- 35). Father misreads our law when he states, "It is an error of law not to address all of the §§5328(a) and 5337(h) factors." (*Id.*).

Section 5328(a) provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all **relevant** factors . . .

23 Pa.C.S.A. § 5328(a) (emphasis added).

Here, as Father states, the trial court did not address custody factor sixteen, "Any other relevant factor." (*Id.*). Factor sixteen provides a trial court the option to address any additional factors not enumerated in the previous fifteen. As it is an option, a trial court need not address factor sixteen unless it has identified an additional relevant factor. The trial court did not err by declining to address custody factor sixteen.

Similarly, section 5337 provides, in pertinent part:

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors . . .

23 Pa.C.S.A. § 5337(h). Relocation factor ten requires the trial court to consider "Any other factor affecting the best interest of the child." 23 Pa. § 5337(h)(10).

- 20 -

In spite of our Legislature's use of the word "shall," in section 5337, relocation factor ten is, by its plain meaning, unmistakably an option that a trial court may exercise if it encounters a factor affecting the best interests of a child that is not found in the preceding enumerated factors. We discern no error or abuse of discretion here where the trial court declined to address "any other factor." Father's claim does not merit relief.

In his final issue, Father complains that the trial court erred by basing its denial of permission to relocate on the distance between Dover and Windber, Pennsylvania. (*See* Father's Brief, at 35-37).

In support of his claim, Father relates that, at the beginning of the trial, the trial court asked counsel if they could agree on the distance between Dover and Windber. Father's counsel replied, "The distance – the time of travel is two and a half hours. Distance is about 150 miles, give or take." (N.T. Hearing, 12/12/14, at 3). Father also quotes the trial court's finding on page one of its opinion, "Two and one half (2½) hours travel time is stipulated between Father's and Mother's current respective residences, and Father's new location." (Trial Ct. Op., at 1).

Father then relies on this Court's decision in *Perrott v. Perrott*, 713 A.2d 666 (Pa. Super. 1998), to support the proposition that, "distance by itself is not dispositive of a relocation denial." (Father's Brief, at 35). In *Perrot* this Court stated, "[T]he fact that considerable distance will increase the cost and logistical problems of maintaining contact between

- 21 -

the child and the noncustodial parent does not necessarily preclude relocation when other factors mitigate in favor of it." ***Perrot***, ***supra*** at 668-69.

Father then proceeds to list a number of factors that he claims mitigate the problems that might arise from the fact that Dover and Windber are so far apart. (***See*** Father's Brief, at 36-37). Father, however, fails to tell us how the trial court erred or abused its discretion when it considered these factors with the other evidence in this case, and reached the conclusion to deny permission to Father to relocate to Windber.

In effect, Father again asks us to re-examine the evidence and reach a conclusion different from that reached by the trial court. As previously explained, we may not do this. ***See T.B.B.***, ***supra*** at 394.

Our examination of the record, as a whole, confirms that the trial court did not err or abuse its discretion when it considered the distance between Dover and Windber, Pennsylvania as **one** of the material factors in the relocation proposed by Father. Father's final issue does not merit relief.

Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015