OPINION BY
FITZGERALD, J.:
¶ 1 Appellant, J.A.S. (“Father”), appeals from the order entered in the York County Court of Common Pleas, denying his petition for shared custody and granting primary physical custody of the parties’ two daughters, E.S., age 11, and C.S., age 10 (collectively, “Children”), to Appellee, B.C.S. (“Mother”).[1] The order also granted shared legal custody to the parties and made specific provisions for holidays and vacations. We hold that a court may not rely on any custom, practice, or judicial norm advancing a presumption of primary physical custody of school-age children when evaluating a petition to modify custody. Accordingly, we vacate and remand with instructions.
¶ 2 The parties married in 1996, and separated in April 2006. Mother resides in York County in the Red Lion School District. Father maintains two residences, one in Washington, D.C., where he is employed as a captain with the District of Columbia Fire Department, and the second in Stewartstown, Pennsylvania, also in the Red Lion School District. Father maintains the second residence specifically so that Children can attend Red Lion School District schools while he exercises physical custody. Father is currently on administrative leave from his employment following an injury suffered in the line of duty in March of 2008. At the time of the hearing in this matter, Father was required to report for work, but he did not expect to return to active duty. Father anticipated he would shortly leave his employment through disability retirement.
¶ 3 On February 13, 2009, Father filed the instant petition to modify the existing custody order. The court held a hearing on July 21 and 22, 2009. Mother, Father, Stacey Stinson (Father’s girlfriend), and Jason and Michele Snyder (Father’s longtime friends) testified. On July 22, the court entered an order effectively denying Father’s petition by granting primary physical custody to Mother and partial physical custody to Father. The order granted the parties shared legal custody. This timely appeal followed.[2]
¶ 4 Father raises the following questions on appeal:
Did the trial court abuse its discretion or commit an error of law by not awarding Father shared physical custody on an equal time basis when the Parties met [the] four part criteria in In re: Wesley J.K. ?
Did the trial court abuse its discretion or commit an error of law by failing to *602 modify the custody order in the best interest of the children?
Did the trial court abuse its discretion or commit an error of law by failing to carefully consider the children’s strong preference for equal shared custody?
Did the trial court abuse its discretion or commit an error of law by citing “York County Practice” as authority for preferring one parent having [primary] physical custody during children’s school year in order to award Mother [primary] physical custody during the school year? Did the trial court abuse its discretion or commit an error of law by making an adverse conclusion against Father when Father made [a] good faith effort to comply with the then-existing custody order, so as to increase his time with the children, when his Fire Engine Department assignment unexpectedly changed?
Father’s Brief, at 6 (re-ordered to facilitate disposition).
¶ 5 We address the first two issues together. Father contends the record establishes that the parties engage in a minimal degree of cooperation required for shared physical custody. He insists the court disregarded Children’s desire to have equal shared time with the parties. Father argues the court abused its discretion by penalizing him for requesting a modification to the custody arrangement when his work schedule changed unexpectedly. In sum, Father contends the court misapprehended the record, and that the evidence of record supports a determination of shared physical custody. Father is entitled to some relief.
¶ 6 Our standard of review follows:
In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making
independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court’s deductions or inferences from its factual findings. Ultimately, the test is whether the trial court’s conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.
A.D. v. M.A.B., 989 A.2d 32, 35-36 (Pa.Super.2010) (citations and quotations omitted; emphasis added).
¶ 7 Shared custody in Pennsylvania is governed by 23 Pa.C.S. § 5304:
§ 5304. Award of shared custody
An order for shared custody may be awarded by the court when it is in the best interest of the child:
(1) upon application of one or both parents;
(2) when the parties have agreed to an award of shared custody; or
(3) in the discretion of the court.
23 Pa.C.S. § 5304. In Wiseman v. Wall, 718 A.2d 844 (Pa.Super.1998), this Court identified factors the trial court is required to consider:
Among the factors which must be considered in awarding shared custody are the following: (1) both parents must be fit, capable of making reasonable child *603 rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child’s life; (3) both parents must be recognized by the child as a source of security and love; (4) a minimal degree of cooperation between the parents must be possible.
Id. at 848; see also In re Wesley J.K., 299 Pa.Super. 504, 445 A.2d 1243, 1248-49 (1982). A minimal degree of cooperation does not
translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.
In re Wesley J.K., 445 A.2d at 1249 (citation omitted).
¶ 8 Instantly, the court found that the parties failed to satisfy the fourth Wise-man factor.[3] The court summarily concluded its decision was “supported by the minimal communication that occurs directly between Mother and Father.” Trial Ct. Op., at 2.[4] The court, however, failed to elaborate on this statement with any findings of fact. For example, the opinion does not identify any examples of poor communication between the parties or otherwise refer to any examples in the notes of testimony. Similarly, Mother does not reference any examples of a lack of communications between the parties. Instead, Mother cites 23 Pa.C.S. § 5304, and suggests the court did not abuse its discretion in denying Father’s motion.
¶ 9 Father, on the other hand, specifically cites the court’s personal beliefs regarding shared custody:
[Ujnless parents are really able to work well together and talk to each other frequently and see each other at sporting events and be civil and cordial, if you can’t do that, then 50/50 growing up during middle school and high school is not going to be pleasant.
* * *
So if you can demonstrate to me [that you can] get to that point, I’ll revisit the issue. But until you can get to that point in my courtroom, you are not likely to see a shared arrangement during the school year. That’s my opinion. Any questions?
N.T., 7/21-22/10, at 186-87.
¶ 10 The In re Wesley J.K. Court never mandated an amicable relationship as a prerequisite for shared custody. See In re Wesley J.K., 445 A.2d at 1249. The law does not require parents to “really [be] able to work well together and talk to each other frequently and ... be civil and cordial.” N.T., 7/21-22/10, at 186. The instant court, however, relied on this reasoning in denying Father’s petition. See id. The court’s personal beliefs with respect to parental communication do not comport with well-established precedent. See id. In particular, the trial court failed to conduct a proper case-by-case assessment of the factors relating to the best interests of Children. See A.D., 989 A.2d at 36. Be *604 cause the trial court misapprehended the law by imposing a heightened standard, we conclude the court abused its discretion. See id.[5]
¶ 11 In light of our disposition of Father’s first two issues, we need not examine Father’s remaining issues, but we make the following observations for reasons of judicial economy. Father asserts that the trial court abused its discretion or committed an error of law by failing to give sufficient weight to Children’s stated preference for shared custody. Given this record, we would agree.
¶ 12 By way of background, 23 Pa. C.S. § 5303 states:
§ 5303. Award of custody, partial custody or visitation
(a) General rule.—
(1) In making an order for custody or partial custody, the court shall consider the preference of the child as well as any other factor which legitimately impacts the child’s physical, intellectual and emotional well-being.
23 Pa.C.S. § 5303.
The weight to be accorded a child’s preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Moreover, as children grow older, more weight must be given to the preference of the child. As this Court has recently reaffirmed, where the households of both parents were equally suitable, a child’s preference to live with one parent could not but tip the evidentiary scale in favor of that parent.
Wheeler v. Mazur, 793 A.2d 929, 937-38 (Pa.Super.2002) (punctuation marks and citations omitted).
¶ 13 Instantly, the court stated that Father did not provide reading therapy for Children while they were in his custody, and that moving between each party’s residences would adversely affect Children’s education. The record, however, appears to contradict the court’s claims:
Q. The reading classes that you mentioned where you got some additional help for your daughters, where did those take place?
[Father]. They were actually offered in [sic] at a Lutheran church in Wyomiss-ing, Pennsylvania. They did take place in Wyomissing. It was the second actual location to either my or [Mother]’s residence that was being offered through this program.
Q. At that time you and [Mother] also had a reading tutor in York, Pennsylvania.
A. No, I don’t recall that. There was a reading tutor in York at that time, but like I said, I saw this program and I thought that it was a nice structured environment and it would help to advance their reading skills.
N.T., 7/21-22/10, at 42-43. Thus, contrary to the court’s assertion, Father appears to have provided reading therapy for Children while they were in his custody.
¶ 14 Similarly, the court suggests that moving between Mother’s and Father’s residence would not permit Children to “achieve stability in the learning process.” Trial Ct. Op., at 3. We acknowledge the court’s reference to C.S.’s testimony that she has forgotten to take her homework *605 when changing households and consequently had to redo it. Based on this record, we find it difficult to conclude that C.S.’s redo of her homework resulted in a destabilization of her learning process. Further, we note that if moving back and forth between the residences of parents in a shared custody arrangement were, by itself, detrimental to a child’s education, then our Courts would consistently conclude that shared custody was not in a child’s best interest, or at least cite it far more often as a significant factor. The trial court, however, proffers no other support for its conclusion that moving between the parties’ households would destabilize Children’s learning process. Indeed, Mother cites no law and makes no argument on this question; she relies, instead, on the court’s opinion. Thus, we would find the trial court articulated two substantive objections that were either contradicted or unsupported by the record. Absent support for those objections, we would conclude the court failed to accord proper weight to Children’s wishes and thus abused its discretion. See 23 Pa.C.S. § 5303; Wheeler, 793 A.2d at 937.
¶ 15 Father also challenges the court’s reliance on “York County Practice” in deciding against a shared custody arrangement. He refers to the court’s comment that courts “in York County have often provided that primary majority custody situations are best suited for children of school age. There are arrangements that can be made if parents reside in the same district and are able to cooperate.” N.T., 7/21-22/09, at 182. Because the law unequivocally provides for a fact-specific, case-by-case analysis of all factors affecting the child’s best interest in custody proceedings, any presumption of primary physical custody for school-age children is completely unfounded. See A.D., 989 A.2d at 36. Unless the legislature determines otherwise, the law contains no presumption that primary physical custody situations are best suited for school-aged children. See id. Indeed, this Court explicitly found the trial court abused its discretion when it awarded primary physical custody based on the “court’s personal view that shared custody is seldom (if ever) in the best interests of school-age child[ren].” See M.A.T. v. G.S.T., 989 A.2d 11, 20 (Pa.Super.2010) (en banc). We thus re-emphasize the impropriety of any custom, practice, or judicial norm advancing a presumption of primary physical custody of school-age children. See id.; A.D., 989 A.2d at 36. Finally, in light of our disposition of Father’s first two issues, we decline to address Father’s last issue. We note, however, that the record does not support the court’s conclusion that Father failed to satisfy the Wiseman factors. Wiseman, 718 A.2d at 848.
¶ 16 Accordingly, we hold that the trial court’s reliance on “York County Practice” that “primary majority custody situations are best suited for children of school age” in denying Father’s petition to modify custody is contrary to well-established case-law mandating a fact-specific analysis of the children’s best interest in resolving any petition to modify custody. For these reasons, we vacate the order of the trial court, and remand with instructions to reconsider its decision, specifically disregarding any common York County “practices,” and analyzing the issues consistently with the principles stated in this opinion. No new hearing is necessary.
¶ 17 Order vacated. Case remanded with instructions. Jurisdiction relinquished.

. We amended the caption to protect the children’s identities.

. Father filed his notice of appeal and his statement of errors complained of on appeal on August 6, 2009.

. Mother does not challenge whether the Wiseman factors were established.

. In its opinion of August 17, 2009, the trial court refers to "the Opinion and order filed July 22, 2009.” Our review of the docket and the certified record reveals that only the order of the trial court was filed on July 22, 2009. Thus, we must rely on the brief, unpaginated, three-page Statement of the Lower Court Pursuant to Pa.R.A.P. 1925(a) for the opinion of the trial court.

. After careful review of the record, we are reluctant to conclude as a matter of law that the parties' efforts fall beneath the "minimal degree of cooperation” standard. The parties’ use of a parenting coordinator and Ms. Stinson as an intermediary would appear to support a determination that the parents have at least attempted to isolate "their personal conflicts from their roles as parents.” In re Wesley J.K., 445 A.2d at 1249.