J-A26032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.J.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.M.B. | : | |
| | : | |
| | : | No. 776 MDA 2017 |
| APPEAL OF: C.M.B. | : | |

Appeal from the Order Entered May 2, 2017
In the Court of Common Pleas of Franklin County Civil Division
at No(s):  2011-2066

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                **FILED NOVEMBER 16, 2017**

C.M.B. ("Mother") appeals from the order entered in the Court of Common Pleas of Franklin County on May 2, 2017, which granted, in part, the petition for modification of the existing custody order filed by B.J.B. ("Father"), with respect to the parties' daughter, H.M.B., born in July of 2002, and their son, C.T.B., born in March of 2004 (collectively, "the Children").  We affirm.

The record reveals that Father commenced the underlying custody action in 2011, following the parties' marital separation.  Thereafter, they agreed, without court intervention, that Mother would exercise primary physical custody, Father partial physical custody Tuesday after work until Thursday morning and every Saturday at 4:00 p.m. until Sunday at 8:00 p.m., and that they would share legal custody.

In December of 2014, Father requested primary physical custody of the Children. In January of 2015, Mother requested to relocate with the Children to Texas, where the parties had resided until October of 2010. Following an evidentiary hearing, by order dated May 18, 2015 ("existing custody order"), the trial court denied Mother's relocation request and granted the parties shared legal custody, Father primary physical custody, and Mother partial physical custody on alternating weeks from Thursday after school, or at 9:00 a.m. if no school, until Monday after school, or until 6:00 p.m. if no school. In addition, the custody order granted the parties two weeks of vacation with the Children per year, and set forth a holiday schedule.

On September 28, 2016, Father filed the subject petition, wherein he requested sole legal custody and a reduction in Mother's partial physical custody to Friday after school until Sunday evening. The trial court held a hearing on April 19, 2017,[1] during which Father testified that C.T.B., who is treated with medication for either Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHD"), receives poor test results after his weekends with Mother. N.T., 4/19/17, at 23-24, 29-30, 50-52. In addition, Father testified that there "is [a] constant tug of war [with Mother] when it comes to anything medical [for the Children]." *Id.* at 30. Specifically,

---

[1] The Honorable Shawn D. Meyers presided over the subject proceedings, but he did not preside over the prior hearing that resulted in the existing custody order.

Father testified that he is frustrated by Mother constantly changing the Children's medical insurance to her insurance. *Id.* Further, Father testified that he re-married in approximately 2013, and that he and his wife have a three-year-old daughter and a one-year-old son.[2] *Id.* at 10, 12.

Mother testified during the hearing that her relationship with the Children has deteriorated since the existing custody order went into effect. *Id.* at 86. As such, she requested primary physical custody or, in the alternative, shared physical custody. *Id.* Mother testified that she resides with her boyfriend and his twelve-year-old daughter, of whom he exercises partial physical custody at the same time that Mother has custody of the Children. *Id.* at 81, 83. In addition, Mother testified that her home is a distance from Father's home of approximately one and one-half miles.[3] *Id.* at 80.

The court interviewed the Children separately, *in camera*, in the presence of the parties' counsel. H.M.B., then age fourteen and in the ninth grade, testified, "I just want to be at Dad's house more." *Id.* at 227. She

---

[2] Father also presented the testimony of J.B., his wife ("Stepmother"); A.A., his mother-in-law; D.L., H.M.B.'s former cheerleading coach; and A.B., a woman who has known Mother and Father for six years and whose children are friends with the Children.

[3] Mother also presented the testimony of M.E., her boyfriend, and L.M., a woman who has been her friend for four years.

testified, in part, that Mother and M.E. fight "[l]ike every weekend."[4]  *Id.* at 231.  H.M.B. continued on inquiry by the trial court:

> Q. Every weekend you're [at Mother's house]?
>
> A. Basically.
>
> . . .
>
> Q. And how frequently do you . . . tell your mom or tell your dad about things going on in the other's house that makes you . . . uncomfortable or unhappy? . . .
>
> A. I don't really tell anything that happens at Dad's house to Mom, because nothing bad happens there.
>
> . . .
>
> A.    But, I guess, . . . I think the one bad thing each week happens at Mom's house.
>
> . . .
>
> A.    Mainly, like, mom and [M.E.] fighting at night.  It is always at night that they fight.  I will like look at the clock and it is 11:00 almost 12:00.  This is why this is the fourth neighbor already.
>
> Q. Neighbors have moved?
>
> A. Yes.
>
> Q. Because, what?  You think they can hear it?
>
> A. Yes.

_____

[4] H.M.B. clarified that she has never seen Mother and M.E. push or shove each other, but she agreed that their fights include yelling and arguing.  N.T., 4/19/17, at 232.

*Id.* at 231, 233. C.T.B., then age thirteen and in the sixth grade, did not specifically testify with respect to his custody preference. However, he testified, "I just don't like going [to Mother's home] sometimes because of how much [Mother and M.E.] argue."[5] *Id.* at 253. Importantly, the Children testified that, to their knowledge, Father and Stepmother do not fight. *Id.* at 231, 246-247.

By order dated and entered on May 2, 2017, the trial court maintained shared legal custody between the parties and primary physical custody in Father. The court granted Mother partial physical custody every other week from Friday after school, or 9:00 a.m. if there is no school, until Sunday at 6:00 p.m. The court maintained the parties' vacation time of two weeks with the Children, and set forth a holiday schedule.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on June 2, 2017.

On appeal, Mother presents the following issue for our review:

Should this [C]ourt reverse the trial court where the trial court cut Mother's custody periods, from an already minimal period of time, in half, where neither the trial record nor the court's own oral ruling provided any justification for said decision?

_____

[5] In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court stated that C.T.B.'s custody preference was inadvertently omitted from his testimony. Trial Court Opinion, 6/2/17, at 1. However, the court found that C.T.B.'s "overall testimony supported the statements of the parties' minor daughter relating to the disruption and difficulties experienced by [C]hildren within [M]other's household." *Id.*

Mother's brief at 7.

We review Mother's issue according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.
>
> *R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,
>
> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> *R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Section 5328(a) of the Child Custody Act, 23 Pa.C.S. § 5321-5340, provides as follows.

### § 5328. Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M.***

***v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). We have further explained as follows.

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, ***supra*** at 822-823.

Instantly, on May 2, 2017, the trial court issued its custody decision on the record in open court, during which it considered the Section 5328(a) best interest factors. ***See*** N.T., 5/2/17, at 1-12. On appeal, Mother contends that the court found the factors neutral between her and Father. Therefore, Mother argues that the court's findings do not support its decision to decrease her partial physical custody provided by the existing custody order. Further,

Mother argues that the court abused its discretion in failing to grant her shared physical custody.[6]

To the best that we can discern, Mother contends the court did not grant shared physical custody because she and Father do not have an amicable relationship. In support of her argument, Mother cites **B.C.S. v. J.A.S.**, 994 A.2d 600 (Pa. Super. 2010), wherein this Court vacated and remanded a custody order denying the father's petition for modification of the existing custody order wherein he requested shared physical custody. In that case, the trial court rejected the father's custody request because it found that he and the mother communicated minimally and did not have an amicable relationship. We concluded that the trial court abused its discretion, in part, because an amicable relationship is not a prerequisite for shared physical custody. **B.C.S.**, 994 A.2d. at 603-604.

We disagree with Mother to the extent she contends that the court in this case did not grant shared physical custody because she and Father do not have an amicable relationship. As such, we conclude that **B.C.S.**, **supra**, is inapplicable to this case.

The trial court explained that the "principle request" of neither Father nor Mother is in the Children's best interest based on the testimonial evidence.

---

[6] Section 5322 defines "shared physical custody" as "[t]he right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child." 23 Pa.C.S. § 5322.

N.T., 5/2/17, at 11. In considering Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, and Section 5328(a)(8), the attempts of a parent to turn the child against the other parent, the court found, "[t]here's a real level of disrespect between the parties and that . . . Father has a very . . . negative view of Mother. . . ." *Id.* at 4.

Specifically, the court found that Father will be compliant with any court order issued, but he "likely will not encourage the [C]hildren to have substantial contact with Mother, beyond what is ordered. . . ." *Id.* The court stated it "does not see in this instance that Mother, given her limited contact with the [C]hildren, would or would not encourage [them] to have continued contact with Father. . . ." *Id.*

Further, the court found no "open, active campaign by either household to turn the [C]hildren against the other parent." *Id.* at 7-8. However, the court found, "there is ample suspicion and disrespect between the parties that bleeds through and comes out to the [C]hildren." *Id.* at 8. Importantly, the court stated it is concerned about this, but explained that Section 5328(a)(1) and (8) are not the sole criteria to consider. *Id.*

Rather, the court gave weighted consideration to the following factors that it found in favor of Father: Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life; Section 5328(a)(7), the well-reasoned preference of the child, based on the child's

maturity and judgment; and Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. As such, we reject Mother's argument that the court found the factors neutral between the parties.

Indeed, the court found that the Children have stability and continuity in their education, family life, and even "active engagement in community life" by residing primarily in Father's household. *Id.* at 6-7. In contrast, the court found there is a "contentious" environment in Mother's household caused by frequent arguments between Mother and her boyfriend that are overheard by the Children.[7] *Id.* at 8.

Upon review, the totality of the testimonial evidence supports the court's findings that the Children have stability and continuity in their education, family life, and community life by residing primarily with Father, and that Father is more likely to maintain a loving, stable, consistent, and nurturing relationship with the Children adequate for their emotional needs. In light of these findings, we conclude that the court's decision was reasonable in rejecting Mother's shared physical custody request and in modifying her partial physical custody in alternating weeks from Thursday to Friday after school or at 9:00 a.m. if no school, until Sunday at 6:00 p.m., instead of

---

[7] We observe that the court weighed equally between the parties Section 5328(a)(3), (10) and (12). Further, the court found inapplicable Section 5328(a)(2), (2.1), (5), (11), and (14).

- 12 -

Monday after school or until 6:00 p.m. if no school. Because the trial court carefully and thoroughly considered the Children's best interests, and we discern no abuse of discretion, we affirm the custody order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2017