J-A18012-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| N.A.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.A.M. | : | No. 1860 WDA 2019 |

Appeal from the Order Entered November 21, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
FC No. 17-90291-C

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                FILED AUGUST 21, 2020

N.A.M. ("Mother") appeals from the November 21, 2019 order, which awarded Mother and M.A.M. ("Father") shared legal custody of L.M. ("Child"), and awarded Father primary physical custody of Child, subject to Mother's partial physical custody rights in accordance with a schedule delineated in the order.  After careful review, we affirm.

Mother and Father are the parents of two children:  R.M., now a young adult woman who lives in Pittsburgh, and Child, born in June of 2006.  The parties divorced on March 2, 2018.  On July 17, 2018, a consent order was entered by the trial court, which awarded Mother and Father shared legal custody of Child, and awarded Father primary physical custody of Child, subject to Mother's partial physical custody.  See Trial Court Order ("Custody Order"), 7/17/18, at 1-3.  Under the Custody Order, Mother has custody every other Friday after school until Monday morning and every Wednesday after

school until Thursday at 7:00 p.m., plus some additional time in the summer. Id. at 3. The order also requires Mother and Child to attend joint counseling and for Mother, Father, and Child to each attend individual counseling. Id. at 5.

Father filed a petition to modify the Custody Order in January of 2019, in which he sought to eliminate Child's Wednesday overnight visits with Mother. Father avers that he has issues with Child every Wednesday morning, as Child does not want to go to Mother's overnight. Trial Court Memorandum ("TCM"), 11/21/19, at 3. Additionally, Father stated that he was concerned about disciplinary actions taken by Mother. Id. On June 17, 2019, Mother filed a counterclaim, seeking to modify the current custody schedule into a shared custody schedule. Mother wants to add a Thursday overnight each week essentially creating a 5-2-2-5 custody schedule. Id.

After a one-day custody trial held on October 15, 2019, the trial court entered a memorandum, see id., and order of court ("Modified Order") on November 21, 2019, maintaining shared legal custody of Child by Mother and Father, as well as primary physical custody by Father, but modifying Mother's partial physical custody rights. See Modified Order, 11/21/19, at 1-6 (unpaginated). In accordance with the Modified Order, Mother has partial physical custody of Child,

> on alternate "weekends" from Thursday after school (or the approximately equivalent time if there is no school) until the beginning of school on the immediately following Tuesday morning (or 10:00 a.m. if there is no school); and ... from after school (or the approximately equivalent time if there is no school) on every

Tuesday that follows a "weekend" that Mother does not have custody of Child ... until 7:30 p.m.

Id. at 2 ¶3 (unpaginated). Mother shall have additional physical custody of Child during the summer and holidays, as delineated in the order. See id. at 2-3 ¶¶4-6 (unpaginated). In support of its Modified Order, the trial court produced a detailed analysis of the custody factors set forth in 23 Pa.C.S. § 5328(a). See TCM at 7-16.

On December 20, 2019, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). Mother presents the following issues for our review:

1. Whether the trial court abused its discretion and committed an error of law by denying Mother's request for an equally shared physical custody schedule[?]

2. Whether the trial court abused its discretion and committed an error of law in its application of the custody factors at 23 Pa.C.S.[] § 5328[?]

3. Whether the trial court abused its discretion and committed an error of law by yielding to ... Child's preference to eliminate the Wednesday overnight period with Mother, despite the fact that "the court did not perceive Child's testimony as evidencing maturity and good judgment[?]"

4. Whether the trial court abused its discretion and erred as a matter of law in analyzing Factor 9 [of Section 5328(a)] based on ... Child's comments during the in camera interview, rather than the evidence and testimony presented, particularly in light of the trial court's finding that ... Child's testimony lacked maturity and good judgment[?]

Mother's Brief at 4-5 (unnecessary capitalization omitted).

We note the relevant scope and standard of review:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the

- 3 -

reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings[] and[,] thus, represent a gross abuse of discretion.

Moreover, on issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. The test is whether the evidence of record supports the trial court's conclusions.

A.V. v. S.T., 87 A.3d 818, 820 (Pa. Super. 2014) (internal citations omitted).

Section 5328(a) of the Child Custody Act (23 Pa.C.S. §§ 5321-5340) proscribes the factors which a court must consider when awarding any form of custody. When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interest of the child based on the relevant Section 5328(a) factors. A.V., 87 A.3d at 822 (citing E.D. v. M.P., 33 A.3d 73, 80 (Pa. Super. 2011)). Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." A.V., 87

- 4 -

A.3d at 823 (quoting M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013)). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." Id.

Here, Mother argues that the trial court's Modified Order is "contrary to the record" and "utterly inconsistent" with its Section 5323(a) factor analysis. Mother's Brief at 13. Mother avers that despite finding she is a fit, capable parent who is equally involved and bonded with Child, the trial court's custody determination favored Father. Id. Moreover, Mother argues that despite its finding that Child lacked maturity and good judgment, the trial court essentially appeased Child. Id. Mother claims that the trial court abused its discretion and committed an error of law by failing to consider Child's best interest and awarding Father more custody than Mother. Id.

In light of Mother's issues, we reproduce the trial court's analysis of the Section 5328(a) custody factors:

> (1) <u>Which party is more likely to encourage and permit frequent and continuing contact between the child and another party</u>[:]
>
> Until the current custody suit commenced, Father and Mother were always able to agree to what the custody arrangement should be via consent orders. It is noteworthy that the Custody ... Order of July 17, 2018, substantially expanded Mother's partial physical custody rights.
>
> On the other hand, the fact that Father has filed the instant Petition to Modify, seemingly on the basis of Child's wishes and complaints, raises a red flag. His current desire to reduce Mother's physical custody time tends to show that he now minimizes the importance of two parents, each playing an active role.

There is no evidence that either party has failed to comply with any court-ordered custody arrangement.

The discussion about Factor 8, below, bears upon this Factor….

(2) <u>The present and past abuse committed by a party or a member of the party's household, where there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child</u>[:]

There is a brief history of alleged abuse between Mother and [Child].  In the spring of 2017, Father filed Petitions for Protection from Abuse against Mother on behalf of himself and [Child].  Mother denies the allegation of abuse.  Both [p]etitions were withdrawn before [the] hearing.  Simultaneously, the parties entered into a consent custody order concerning Child.  [Children, Youth and Families ("CYF")] has conducted two investigations, each resulting in a report of unfounded.

The incident which lead [sic] to the filings of the Petitions for Protection from Abuse was a fight between Mother and [Child], prompted by [Child] telling her "you fuck men."  Then [Child] threw a toy at Mother, hitting her in the face, and Mother reacted by attempting to spank [Child].  This altercation resulted in [Child] lying on her bed with Mother on top of her.  Father presented a photograph to this [c]ourt depicting a bruise on Child's leg; however, Mother testified that she does not believe that bruise was a result of the incident.  [Child] has accepted some fault for this incident in her testimony and further testified that both Mother and Child have apologized to each other.

Except for this one incident, there has been no other allegation of abuse, and this [c]ourt does not believe that [Child] is at risk of harm from either Mother or Father.

(3) <u>The parental duties performed by each party on behalf of the child</u>[:]

Because Father has had primary custody of [Child] since 2017, he has performed the bulk of parental duties in the past couple of years.  Nevertheless, Mother has generally continued her practice of scheduling medical and dental appointments and transporting Child to them.  Both parties help [Child] with homework[—]Mother perhaps too much[].

There is no reason not to believe that both Father and Mother each did their fair share of parenting before the separation.

(4)     The need for stability and continuity in the child's education, family life, and community[:]

Any reasonably small change in the current custody arrangement will not disrupt continuity and stability ... Child now experiences.   [Child] will continue to be with each parent for substantial periods of time.   She will still attend school in the Lower Burrell School District.   She will still have close friends in the vicinity of each parent's home.   She will continue to have relationships with members of her extended family.

Just a further note about "stability" is warranted.   In her testimony, Child informed the [c]ourt that it is difficult for her to make the transition into her Mother's care every Wednesday afternoon and then back into the care of her Father each Thursday evening. Paraphrasing Child, she complained of "too many exchanges."

(5)     The availability of extended family[:]

Maternal Grandmother, maternal uncle, [and] several maternal aunts together with their children live in the Sarver area. They all commonly engage in birthday celebrations, cookouts, etc. [Child] enjoys their company.   Mother often drives both [Child] and [Child's] maternal cousins together to school.

Paternal Grandfather lives in Natrona Heights.   He sees [Child] at least twice a week, usually at bowling events at the bowling alley owned by Father.   [Child] and Paternal Grandfather have a close relationship.   Together with Father, they have gone on vacations.

(6)     The child's sibling relationships[:]

The parties' oldest daughter, R.M., a young adult, does not live with either parent, but her relationship with [Child] is quite strong.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment[:]

Child, in her in camera testimony, expressed a general desire to spend more time with Father and less with Mother, mostly because she does not feel comfortable with Mother.

Mother and Child have had a somewhat fractured relationship during the past couple years. They have been in joint therapy with Dr. Gilman for a substantial period of time. [Child] also engages in individual therapy with [Dr.] Gilman.

As described above in the discussion of Factor 2, there was a physical altercation between Child and Mother, prompted by Child's telling her that "you fuck men" and throwing a toy, hitting Mother in the face with it. There ensued a bit of a wrestling contest during which Mother attempted to spank Child. It was a very ugly scene. They apologized to each other when their anger subsided.

Child blames Mother more for the divorce than she does Father. Child testified that she has been verbally abused and emotionally abused by Mother. The [c]ourt concludes that Child's perception is to be "taken with a grain of salt." The [c]ourt, of course and without doubt, believes that arguments between the two have not been uncommon.

Child strongly prefers Father's methods of disciplining. He displays more patience. Mother is more authoritarian than Father, and arguments can ensue as a result.

Two of the underlying issues arise from [Child's] homework and her Girl Scouts activities. Mother sometimes chastises Child for not completing her Scout activities. Concerning homework, Child's recent grades in algebra have been poor. Mother often sits down with Child and goes over her entire algebra homework assignment with her. Child (who is being independently tutored in algebra) fiercely resents this, stating that Mother is a parent and not a math teacher. She wants Mother to only help her on algebra problems that Child finds to be too difficult to do on her own.

Overall, the [c]ourt did not perceive Child's testimony as evidencing maturity and good judgment, except for one specific request: Child said the overnight weekly stay at Mother's house from Wednesday afternoon until Thursday afternoon was too much for her to handle. Child felt that there were too many custody exchanges occurring.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm[:]

During her direct examination, Mother testified about certain events that reflect upon this factor. She testified that in the not too distant past, Father told her "I alienated R.M. from you. It's the only thing that you have on me." In his rebuttal testimony, Father stated he did not know what parental alienation was until much more recently, when he himself entered into counseling. The rebuttal testimony was not very convincing.

Mother also testified about an incident involving [Child] becoming ill (a cough and low-grade ever [sic]) on a school night. Mother messaged Father using Our Family Wizard [("OFW")]. Father replied, informing Mother that [Child] had already contacted him about her condition. In the reply, Father insisted that Mother contact him the next morning about whether [Child] should attend school. At 8:25 a.m.[,] on the following morning, Mother again communicated with Father informing him as follows:

> [Child] woke up with a sore throat and little congestion. She had an Advil at 7[:]30 and wanted to go [to] school. She felt better and sounded better leaving....

Father replied to the 8:25 a.m. message at 8:35 a.m.[,] as follows:

> I'm well aware as she called me at 7:04 to inform me and followed up again at 7:35. She is a wonderful child and is immensely communicative about her physical health and emotional wellbeing.

Mother testified during her direct examination that she thought that Father's final message to her was "unnecessary."

The [c]ourt draws certain conclusions from this series of messages back and forth. First, on the surface of things, Father did not trust Mother to make a decision about whether Child should miss a day of school because of a cough and low-grade fever.[1] Second, the mistrust seems to have been inculcated in Child.... Third, Mother resented Father's insistence that he participate (via OFW) in the morning decision of whether [Child] should attend school that day. Fourth, Father gloated over the fact that [Child] had been in contact with him before Mother messaged him both times. One can infer that Father is pleased by and experiences satisfaction from the somewhat fractured relationship of Mother and Child. This series of events constitute[s] a subtle expression of aggression by Father.

[1] The evidence clearly establishes that Mother was quite capable of making a decision concerning this relatively minor matter. See discussion of Factor 10.

(9) <u>Which party is more likely to maintain a loving, stable, consistent and nurturing relationship adequate for the child's emotional needs</u>[:]

Child perceives, at least currently, that Father is more capable than Mother and is more likely to provide a loving, stable, consistent and nurturing relationship with her adequate for her emotional needs. There is good reason for Child to think so: Father has continued to address her emotional needs throughout the separation and divorce. He has been the one to whom she has taken most of her problems.

The [c]ourt does not mean to imply that Father's performance with regard to Child's emotional needs has been without fault. See discussion of Factor 8 above.

The [c]ourt does not mean to imply that Mother is incapable of doing so. For reasons discussed about Factor 7, she cannot fully do so at this time. Their relationship prevents it.

(10) <u>Which party is likely to attend the daily physical, emotional, developmental, educational and specific needs of the child</u>[:]

The word ["]emotional["] is used in defining this factor. See discussion of Factor 9 above.

Otherwise, each party is quite capable of meeting the daily physical, developmental, educational and special needs of Child when given the opportunity.

(11) <u>The proximity of the residences of the parties</u>[:]

Mother and Father live in the Sarver area (Butler County) and in Lower Burrell Township (Westmoreland County), respectively, about twelve miles apart.

At first, Mother wanted [Child] to continue to attend Freeport Area Schools, which she had attended before Father

relocated.[1]  She is now content that [Child] attend school in the Burrell School District.

(12)  <u>Each party's availability to care for the child or ability to make appropriate child-care arrangements</u>[:]

[Child] is 13 years old[] and, therefore, this factor is less important.  It must be noted that Mother is not employed and is not seeking employment currently.  She has extended family in the area.

Father's working hours are somewhat flexible[,] because he is self-employed.

(13)  <u>The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another</u>[:]

The evidence clearly establishes that Father's hostility towards Mother is greater than Mother's for him, if indeed she has any. (See discussion of Factor 8, above...).

(14)  <u>History of drug or alcohol abuse of a party or members of a party's household</u>[:]

There was no evidence offered at trial that indicated that either parent has or had a substance abuse problem.

(15)  <u>The mental and physical condition of a party or member of a party's household</u>[:]

Neither Father nor Mother have any physical health issues.  [Child] has none either.  Everyone is properly in therapy at the current time.

(16)  <u>Any other relevant factor</u>[:]

Mother had limited contact with the children from the time of separation until the June 20, 2017 Interim Order was entered.  The record does not indicate why this occurred.

TCM at 7-16 (citations to record omitted).

_____

[1] The trial court entered a consent order on January 9, 2018, "which permitted Father to relocate to Lower Burrell ... from Sarver..., the site of the marital residence, which has been occupied by Mother ever since the relocation occurred."  TCM at 2.

Following its analysis of the 16 custody factors, the trial court highlighted the following observations:

1) Both Father and Mother are quite capable of addressing Child's daily physical, development[al], educational[,] and specific needs. The somewhat fractured relationship between Mother and Child has resulted in Child's experiencing anger and anxieties.

2) ... Child has recited reasons for her anger, anxieties, and discomfort which show that her desire to spend less time with Mother is less than a mature, well-reasoned preference.

3) Mother testified that the joint counseling with Child has been helpful. There is no reason to believe that their relationship cannot be whole again. Child will grow more mature, and Mother hopefully will grow to better understand Child's increasing desire to be independent. Mother can easily take steps immediately to minimize the conflicts over homework and Girl Scouts.

4) There is a risk that Father will do what he subtly can "to keep [Child] in his camp." This must be an issue addressed by Father in his therapy sessions.

5) Father and Mother have a history of being able to reasonably and civilly communicate with each other about [Child's] needs.

Id. at 16-17. The trial court emphasized that "[i]f the relationship between Mother and Child would normalize, the [c]ourt would give serious consideration to a shared physical custody award[,]" and added that the evidence "does not warrant a reduction in Mother's partial physical custody rights." Id. at 17.

For ease of disposition, we address Mother's first two claims together. Mother asserts that the trial court's custody award "openly contradicts its own findings" and is "manifestly unreasonable in light of the evidence presented."

Mother's Brief at 16. She further avers that the court erred in its application of the Section 5328 custody factors and that its analysis lacks sufficient reasoning and competent evidence to support its award of primary physical custody to Father. Id. at 19-20. In support of her argument, she states that the trial court's examination of the custody factors reveals that Mother and Father are "essentially equal, with three ... factors weighing slightly against Father[,]" id. at 20, and avers that the trial court's custody determination ignored evidence and findings which were unfavorable to Father. Id. at 23.

More specifically, Mother argues that Factors 1, 8, and 13, are unfavorable to Father, and that none of the factors weigh against her. Id. at 17. She avers that the trial court's analysis of these three factors constitutes "findings of numerous attempts by Father to minimize and discourage ... [C]hild's relationship with Mother, and his efforts to turn ... [C]hild against Mother, coupled with his hostility and aggression toward Mother[.]" Id. at 26. She concludes that the trial court's award of custody more favorable to Father contradicts its findings, "especially where the remaining factors weigh in Mother's favor, or at a minimum weighed [sic] evenly between the parents," and, thus, constitutes an abuse of discretion. Id.

To the contrary, Father avers that Factors 4 and 7, are slightly unfavorable to Mother and that Factor 6 is favorable to Father. Father's Brief at 12. In its discussion of Factors 4 and 7, Father alleges that the trial court found the current custodial arrangement to be stable for Child and that the small shift in the custody schedule ordered by the court supports its finding

that the Wednesday overnight was disruptive to Child. Id. at 12-13 (citing TCM at 11-12 (noting that "Child felt that there were too many custody exchanges occurring")). Moreover, Father notes that the trial court acknowledged Mother and Child have had a "somewhat fractured relationship[.]" Id. at 13 (quoting TCM at 10). In regards to Factor 6, in which the trial court determined Child's relationship with her older sibling to be strong, Father argues that this factor is in his favor, as Mother has no current relationship with R.M., and that he is the one who facilitates the relationship between the siblings. Id.

Based on our review of the record, we discern that, while taking into account Child's best interest, the trial court carefully considered all of the statutorily mandated factors in arriving at its custody determination, that its findings are supported by the record, and that it adequately explained the basis for its decision. See 23 Pa.C.S. § 5323(d); A.V., 87 A.3d at 823. The trial court's analysis did not weigh heavily in favor of one party over the other; thus, it was within the court's discretion to maintain Father's award of primary physical custody, subject to Mother's partial physical custody. The court shifted the schedule, however, to take into account Child's testimony, which it found credible, that the Wednesday overnight with Mother was hard on her. The court eliminated the midweek overnight to minimize the back and forth for Child, but was also careful to maintain the same number of overnights with Mother on a monthly basis, as it found the evidence did not warrant a

reduction in her partial physical custody rights.[2]  See TCM at 17.  It is clear that the trial court gave careful consideration to all evidence presented.

Moreover, it is well-settled that,

> [t]he parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

S.M. v. J.M., 811 A.2d 621, 623 (Pa. Super. 2002) (citing Robinson v. Robinson, 645 A.2d 836, 838 (Pa. 1994)).  The trial court's findings regarding the custody factors are supported by the record, and we discern no error of law or abuse of discretion.  Thus, Mother is not entitled to any relief on these claims.

Next, we address Mother's assertion that the trial court erred in its analysis of Factor 7, and by yielding to Child's preference regarding the custody schedule, despite a finding that Child's testimony lacked maturity and good judgment.  Mother's Brief at 26-27.  Pursuant to Section 5328(a)(7), the court shall consider "the well-reasoned preference of the child, based on the child's maturity and judgment."  23 Pa.C.S. § 5328(a)(7).

> The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference.  Moreover, as children grow older, more weight must be given to the preference of the child.  As this Court has recently reaffirmed, where the households of both parents

_____

[2] Under the Modified Order, Mother has custody of Child every other Thursday after school until Tuesday morning and every other Tuesday evening with Child.  See Modified Order at 2 ¶3 (unpaginated).

were equally suitable, a child's preference to live with one parent could not but tip the evidentiary scale in favor of that parent.

E.B. v. D.B., 209 A.3d 451, 468 (Pa. Super. 2019) (quoting B.C.S. v. J.A.S., 994 A.2d 600, 604 (Pa. Super. 2010)).

Instantly, after noting Child's desire to spend more time with Father and less with Mother, her "somewhat fractured relationship" with Mother during the past couple years, and her preference for Father's discipline style over that of Mother's, the trial court found that Child's testimony overall did not evidence maturity and good judgment, "except for one specific request: Child said the overnight weekly stay at Mother's house from Wednesday afternoon until Thursday afternoon was too much for her to handle. Child felt that there were too many custody exchanges occurring." TCM at 11-12 (emphasis added). Mother contends, however, that Child's entire testimony lacks maturity and good judgment, and that because Child was unable to provide any specific reasons for eliminating only Wednesday nights with Mother,[3] the trial court abused its discretion in giving weight to Child's preference as to this issue. Mother's Brief at 29, 31.

Mother is essentially asking us to reject the trial court's findings and reweigh its credibility determinations. We cannot do so. Rather,

_____

[3] Mother suggests that Child could not differentiate her dislike for Wednesday over her dislike for all other custody time with Mother, specifically Sunday nights. Mother's Brief at 29. Instead, she avers that Child testified generally that "going back and forth between homes is difficult, [that] it bothers her being at her Mother's home[,] ... and it is hard because she goes to school and does not want to have to take extra things...." Id.

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

J.R.M. v. J.E.A., 33 A.3d 647, 650 (Pa. Super. 2011). Having already determined that the trial court's findings are supported by the record, we conclude that Mother is not entitled to any relief on this claim.

Finally, Mother claims that the trial court erred in basing its analysis of Factor 9 on Child's testimony, rather than on her evidence and testimony presented at the hearing. Mother's Brief at 31. Mother argues that although the trial court concluded both parents are capable of maintaining a loving, stable, consistent, and nurturing relationship with Child, it erred in relying on Child's perception. In support of her argument, she refers to the trial court's determination that "Child perceives, at least currently, that Father is more capable than Mother and is more likely to provide … for her emotional needs." Id. at 32 (citing TCM at 14). The court further explained in its analysis: "There is good reason for Child to think so[.] Father has continued to address her emotional needs throughout the separation and divorce. He has been the one to whom she has taken most of her problems." TCM at 14. Although the court did note Child's perception in its analysis, it further stated that it did not mean to imply that "Father's performance with regard to Child's emotional needs has been without fault[,]" or that "Mother is incapable of doing so." TCM at 4. The trial court incorporated its detailed discussions in Factors 7 and 8 to its analysis of Factor 9, and concluded that Mother simply cannot fully

meet Child's emotional needs "at this time[,]" as "[t]heir relationship prevents it." Id. at 14 (emphasis added).

Regardless of the trial court's explanation, Mother asserts she testified credibly that her relationship with Child does not rise to the "level of drama" described by Father during his testimony, and coincidentally by Child. Mother's Brief at 32. Mother further points to her testimony that she is willing to continue joint therapy sessions with Dr. Gilman and that doing so would be in Child's best interest. Id. She claims that since the entry of the July 17, 2018 Custody Order, "things are going well with … [C]hild, and they have not experienced any major blowups." Id. at 33. Mother contends that Child's preference to spend less time in Mother's custody is "superficial, at best[,]" id., and that the trial court disregarded Mother's credible testimony in its analysis. Id. at 34.

We have already concluded that the trial court has appropriately considered the factors enumerated in section 5328(a), and that the findings in connection thereto are supported by the record. Again, Mother is asking us to reject the trial court's findings and credibility determinations in favor of the findings and credibility determinations she proposes, which we cannot do. See J.R.M., 33 A.3d at 650. Mother's claim is meritless.

Accordingly, we affirm the trial court's November 21, 2019 Modified Order and the custody schedule delineated therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/21/2020