J-A05007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| J.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.D. | : | |
| | : | |
| Appellant | : | No. 1099 WDA 2024 |

Appeal from the Order Entered August 9, 2024
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 2023-90718-C

BEFORE:    MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E. *

MEMORANDUM BY MURRAY, J.:                    **FILED: March 4, 2025**

In this child custody action, M.D. (Mother), biological mother of I.B. (Child or the Child), a minor daughter born in June 2016, appeals from the order that 1) denied Mother's petition to relocate with Child; 2) awarded Mother primary physical custody of Child, subject to the partial physical custody periods of Child's biological father, J.B. (Father); and 3) awarded the parties shared legal custody. Mother challenges several of the trial court's factual findings as belied by the record, constituting a reversible abuse of discretion. After careful review, we affirm.

The trial court made the following factual findings:

---

* Retired Senior Judge assigned to the Superior Court.

Mother and Father began dating when they were both residing in New York. Eventually, Father moved into Mother's residence, where she lived with her two older daughters from a previous relationship.[1] Father performed parental duties and treated Mother's daughters as his own. When [Child] was born, Mother was on maternity leave for three months[. Subsequently,] Father went on paternity leave for a few months, when Mother returned to work. Thereafter, [Child] was enrolled in daycare, except for the period of time during the [COVID-19] pandemic, when she remained at home with her parents.

During the time when the parties resided as an intact family, Mother obtained three college degrees, attending evening classes while she worked during the day. Mother initially worked outside the home, and then began working remotely in 2020. Mother has been [Child's] primary caregiver, but Father also regularly performed parental duties. Father took on more responsibility in caring for the [C]hildren when Mother was at class, and during periods when [Father] was unemployed.

In 2020, Mother's employer in New York began reducing it[]s staff, so Mother began looking for a more stable position. She obtained employment in Pennsylvania, which required the family to relocate. [Mother's new] position started as remote, but Mother expected to transition to in-person employment with the company. However, after the family moved to [Cranberry Township, Butler County,] Pennsylvania in 2021, Mother was allowed to continue working remotely[. ]Father worked outside the home. At that time, the parties were engaged to be married,[2] and Mother intended the move to Pennsylvania to signify a fresh start for the family. Mother's oldest daughter, who was college-aged at the time, remained in New York.

In 2022, the parties separated and Father moved out of the family residence.[3] Mother and Father were initially able to work

_____

[1] We collectively refer to Child and Mother's older daughters as "Children."

[2] The parties never married.

[3] Mother currently resides in Cranberry Township, Pennsylvania, in the same rental home she secured upon the parties' move to Pennsylvania (Mother's

*(Footnote Continued Next Page)*

out an informal custody arrangement[ (original custody arrangement), wherein Mother exercised primary physical custody of Child, subject to Father's periods of partial physical custody, and the parties shared legal custody].[4] In November 2023, Father began appearing at Child's [school] bus stop, located in front of Mother's residence[, on Mother's custodial days]. Father would make a scene and insist that Child go with him instead of Mother. [After one of these incidents at Child's bus stop], Father withheld custody [of Child] from Mother for a period of two weeks.

Memorandum Opinion/Findings of Fact, 8/9/24, at 1-2 (footnotes added; some punctuation modified).

The trial court also concisely explained the procedural history underlying this appeal:

On December 6, 2023, Father filed [a *pro se*] Complaint for Custody [pursuant to the Child Custody Act (the Act), 23 Pa.C.S.A. §§ 5321-5340, seeking an award of primary physical custody of Child and shared legal custody. One week later,] Mother filed an Emergency Petition for Special Relief, seeking the return of Child to her custody[5] and requesting an interim custody order [providing] that Mother have primary physical custody, subject to Father's partial custody every week from Sunday at noon through Tuesday before school[,] or 3:00 p.m. [On December 26, 2023, the trial court entered a custody order, which was similar to the parties' original custody arrangement, which awarded Mother

_____

residence). Complaint for Custody, 12/6/23, ¶ 2; N.T., 8/5/24, at 163. Father resides nearby, in a separate rental home located in Cranberry Township. Complaint for Custody, 12/6/23, ¶ 1; N.T., 8/5/24, at 15.

[4] Specifically, under the original custody arrangement, Mother exercised physical custody every week from Tuesday after the end of Child's school day, to Sunday evening; Father exercised custody during the remaining period (*i.e.*, Sunday to Tuesday).

[5] Mother averred Father improperly withheld physical custody from her, and that the last time she had seen Child was on November 28, 2023. Emergency Petition for Special Relief, 12/23/23, ¶¶ 7-8, 12.

primary physical custody, subject to Father's periods of partial custody.]

> On March 7, 2024, Mother filed [a] Notice of Proposed Relocation [(relocation petition), stating her intention to move with Child] to Blauvelt, New York.[6] Mother's family is from Blauvelt, and many family members continue to reside there. Mother intends to reside with [her parents (Maternal Grandparents) in Blauvelt,] until she obtains permanent housing [in New York]. Mother's primary reason for [seeking to relocate] is the support of her family. Mother also assert[ed] that [Child's] proposed new school district [in Blauvelt] is a better fit for Child, and that Child will have more opportunities due to [Mother's] family's connections in the area.
>
> [Father opposed Mother's relocation petition[7] and] object[ed] to disrupting Child's stability in her education and community. [Father asserted that h]e would not be able to maintain his current custody schedule if Child [primarily resides] in New York. Father also [expressed] concerns about Mother's alcohol consumption, and allege[d] that Mother does not supervise Child when [Mother] is "passed out."

Memorandum Opinion/Findings of Fact, 8/9/24, at 3 (footnotes added).

The matter proceeded to a custody trial on August 5-6, 2024, wherein Father appeared *pro se* and Mother appeared with private counsel. Father testified as his only witness. Father resides in a three-bedroom rental home located in Cranberry Township (Father's residence), with Father's mother (Paternal Grandmother). *See* Complaint for Custody, 12/6/23, ¶ 1; N.T., 8/5/24, at 15. Father testified that he 1) has personally observed Mother

---

[6] Blauvelt, a suburb of New York City, is over 300 miles away from the parties' respective residences in Cranberry Township.

[7] Father did not file a formal response to the relocation petition; rather, he opposed relocation at a custody trial.

abuse alcohol on numerous occasions; 2) had concerns about the detrimental effects Mother's alleged alcohol abuse has on Child; and 3) filed his custody complaint in response to these concerns. *See* N.T., 8/5/24, at 11-12. According to Father, when Mother is intoxicated, she fails to adequately supervise Children. *Id.* at 12. Specifically, Father testified that "[Mother] drinks beyond excess, and it's either [Mother will] pass out … or … yell at everybody" around her. *Id.* Father stated that Mother previously entered a rehabilitation facility related to her alcohol abuse. *Id.* at 13; *see also id.* (Father claiming Maternal Grandparents are aware of Mother's alcohol abuse). Father further alleged that there were occasions where agents of Butler County Children and Youth Services responded to Mother's residence, in relation to Mother's intoxicated state while caring for Children. *See id.* at 13-15.

Father testified that he 1) is "in a good situation now"; and 2) asked Paternal Grandmother to move into Father's residence to assist Father. *Id.* at 15, 38; *see also id.* at 15 (Father stating that Paternal Grandmother can "help [Father] so I have somebody to [] watch [Child].").

On cross-examination, Father confirmed that he did not "bring any documentation supporting [his] case[.]" *Id.* at 18; *see also id.* at 22 (Mother's counsel stating, "I would just like the record to reflect that [Father] has not offered any exhibits on direct examination"). Father further confirmed that he never 1) "asked for this [c]ourt to address [Mother's] alleged drinking

problem"; or 2) "attempt[ed] to report [Mother's] alleged problem to authorities[.]" *Id.* at 22-23. Father additionally confirmed that he is a convicted felon. *Id.* at 33; *see also id.* at 58 (Father stating he had convictions for assault and robbery, and served "15 years in prison, [and] came home in 2010.").

Father testified he is employed full-time at Walmart and works the night shift, from 10:00 p.m. to 7:00 a.m. *Id.* at 36, 39. Father stated that when he has overnight physical custody of Child, and Father is required to work, Paternal Grandmother supervises Child. *Id.* at 36-37; *see also id.* at 37 (Father explaining that Paternal Grandmother is retired). Father conceded that his driver's license is suspended, but alleged that Paternal Grandmother and Father's friends assist him with his transportation needs. *Id.* at 35-36; *see also id.* at 58 (Father asserting that his license was suspended related to "a small mix[-]up in some payments [towards fines] that [he] made in New York"), 71 (Father stating he never applied for a Pennsylvania driver's license after moving from New York). Father acknowledged that Paternal Grandmother contributes financially to the rent for Father's residence and other household bills. *Id.* at 38.

Father testified, in response to the trial court's examination, that when he, Mother, and Child resided together, he and Mother "equally did everything" with respect to Child's care, including food preparation and changing diapers.

*Id.* at 54. Father asserted he is also involved in Child's schooling and activities. *Id.*

Father further testified that he smokes marijuana and does not have a Pennsylvania medical marijuana license. *Id.* at 56. Father denied being dependent upon marijuana and stated that he purchases it legally in New York. *Id.* at 67. According to Father, Child is unaware of his marijuana use. *Id.* at 56.

Mother testified at the custody trial and also presented testimony from her older brother, P.D. (Maternal Uncle), and Mother's father, R.D. (Maternal Grandfather). Mother resides in a three-bedroom, single family rental home located in Cranberry Township.[8] *Id.* at 163. Mother testified that before the parties moved to Cranberry Township, Mother performed the majority of the child-care duties, including feeding, bathing, changing diapers, and coordinating Child's daycare and medical appointments. *See id.* at 89-95; *see also id.* at 93 (Mother stating that "when I needed" Father to assist with caring for Child, "and when I asked him, he would … be there."). Mother

---

[8] Mother testified that her monthly rent is $1,900. N.T., 8/5/24, at 163; *see also id.* (Mother stating that when she moved into Mother's residence two years earlier, the rent was $1,600). Mother confirmed that given the increase in her rent, it was her "intention to move out of [Mother's] residence regardless of what happens" with respect to her relocation petition. *Id.* at 164; *see also id.* (Mother stating that the "smart thing for me to do would be to find [a rental property that is] a little bit more reasonable" in price). Mother also acknowledged that the cost of living in New York "is a bit more there than here." *Id.* at 238.

stated that while the parties resided together, she paid for all of Child's "daycare bills" and "all the rent in the house the whole time." *Id.* at 92, 95; *see also id.* at 96 (Mother confirming that she did not feel she could depend on Father contributing financially to the household expenses, "due to his spotty work history[.]").

Mother described her current employment in detail, wherein she works remotely as an accounting manager for a company based in Pittsburgh (employer). *See id.* at 99-104. Mother stated her annual salary is $86,000. *Id.* at 107. Mother testified that she prepared Father's taxes for the preceding year, and asserted he "made about [$]25,000 for the year, but I think he is working more now than he did last year." *Id.* at 108. Mother confirmed that she was financially "able to support" her household based on her income alone. *Id.* Mother testified that she informed employer of her desire to relocate to New York, and employer responded that "they would have no issue with [Mother] moving and continuing to work for" employer. *Id.* at 105.

Mother additionally stated that if the trial court permitted her to relocate to New York, and she obtained new employment "in New York[, she could] get paid significantly more." *Id.* at 104; *see also id.* at 109 (Mother testifying that in New York, "there's more opportunities" and "more jobs"). Mother testified that if the court granted her relocation petition, she and Child would temporarily reside at Maternal Grandparents' home in Blauvelt, until Mother secured a separate rental property. *Id.* at 166; *see also id.* at 167 (Mother

confirming she did not "anticipate struggling to find suitable housing" in a rental property).

Mother also gave extensive testimony about Child's proposed new school district in Blauvelt, which, Mother claimed, was superior to Child's current school district in several respects, including rankings, diversity, and student-teacher ratios. *See id.* at 170-75; *see also* Mother's Ex. 4. Mother opined that relocation was "in the best interests of [Child,]" as residing in New York afforded Child "more access to opportunities … in a little bit of a more diverse area[.]" *Id.* at 182.

Mother denied having a problem with alcohol, but acknowledged her "voluntary" participation in an alcohol treatment rehabilitation program "several years ago[.]" *Id.* at 179, 180. Mother also confirmed that she does not "have any type of criminal history related to drugs or alcohol[.]" *Id.* at 182. Mother testified on cross-examination that "[o]n an average night, I don't [drink alcohol]. I drink on occasions, maybe on the weekend after a long week." *Id.* at 204.

Maternal Uncle testified that he resides with his family in Schwenksville, Montgomery County, Pennsylvania. *Id.* at 252; *see also id.* (Maternal Uncle stating his residence is approximately two hours away from Blauvelt). Maternal Uncle stated that his family sometimes visits with Mother and Child on holidays. *Id.* at 254-55. Maternal Uncle confirmed that he did not "believe that [Mother filed her relocation petition] in retaliation [to Father's] filing a

custody action[.]" **Id.** at 259. Maternal Uncle further confirmed that he has never "observed anything that would make [him] conclude that [Mother] … might have an alcohol problem[.]" **Id.** at 260; **see also id.** (Maternal Uncle stating Mother is a social drinker). Maternal Uncle testified that Maternal Grandparents have been very supportive of Mother over the years. **Id.** at 263-64. Maternal Uncle opined that Child "would have … a lot of benefit by being around more of [Mother's] family." **Id.** at 264.[9]

Maternal Grandfather testified that if the trial court granted Mother's relocation petition, she and Child would be welcome to reside in Maternal Grandparents' four-bedroom, single family residence in Blauvelt, which has space to comfortably accommodate them. N.T., 8/6/24, at 17-18. Maternal Grandfather confirmed that "Mother's intent would be to live with [Maternal Grandparents] on a temporary basis until she found her own permanent residenc[e]" in New York. **Id.** at 18. Maternal Grandfather further confirmed he "feel[s] that [Mother] has the ability to [financially] support herself and [Child.]" **Id.**

The trial court conducted an *in camera* interview of Child, who was eight years, two months old at the time. N.T., 8/5/24, at 116. Child confirmed that neither party "told [Child] what to tell" the trial court during Child's interview. **Id.** at 117-18. Child described her living situation at the parties' respective

---

[9] Father had no questions for Maternal Uncle on cross-examination.

residences, and activities she engages in with each parent. *See id.* at 120-21, 124. Child informed the court that Father frequently takes her places, such as the pool or going for walks, which Child enjoys. *Id.* at 124; *see also id.* at 123-24 (Child describing her relationship with Paternal Grandmother). Child also discussed her elementary school and some of her friends, stating she "like[s school] a lot" and has a "best friend" who lives in Cranberry Township. *Id.* at 121-22; *see also id.* at 128 (Child stating she does not have any friends in New York). Child confirmed that she is "pretty close" with both Mother and Father. *Id.* at 130. Child further confirmed that there was never "a time when [Father] wasn't around." *Id.* In response to the trial court's question as to whether Child preferred moving to New York or "staying here," Child stated, "I like staying here." *Id.* at 132.

On August 9, 2024, the trial court entered a final order (custody order), accompanied by a comprehensive memorandum opinion/findings of fact. In the custody order, the court 1) denied Mother's relocation petition; 2) granted Mother primary physical custody of Child, subject to Father's periods of partial physical custody;[10] and 3) awarded shared legal custody. Custody Order, 8/9/24, ¶¶ 1-2, 7. In the trial court's accompanying memorandum opinion, it found, *inter alia*, as follows:

---

[10] In her appellate brief, Mother explained that the custody order's physical custody schedule "closely resembled the parties' custodial arrangement prior to trial[,]" *i.e.*, wherein Mother exercised custody of Child five days per week, and Father had custody of Child the remaining two days. Mother's Brief at 11.

Mother's reasons for [seeking to relocate] are genuine and rational. Mother and Child would benefit from the family support. However, Mother's reasons do not outweigh the detriment to Child's relationship with Father and the disruption to [Child's] stability. Father has always been an involved parent, and Child has enjoyed frequent contact with Father since the parties' separation. Further, Child does well in school, has close friends, and desires to remain in her environment.

Memorandum Opinion/Findings of Fact, 8/9/24, at 3. The trial court concluded that "Mother failed to meet her burden of establishing that the relocation would serve the best interests of Child." *Id.* at 16.

On September 9, 2024, Mother timely filed a notice of appeal, contemporaneously with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court subsequently issued a Rule 1925(a) opinion, which concluded as follows:

The [trial] court's findings regarding credibility and weight of the evidence are supported by the record and should not be disturbed. Therefore, the court relies upon the reasons as stated on the record during the trial[,] and in the Memorandum Opinion entered on August 9, 2024[,] in [support of the court's] position that the [custody order] should be affirmed.

Trial Court Opinion, 10/24/24, at 2 (unpaginated) (some capitalization modified).

On appeal, Mother presents the following issues for our review:

I.    Whether the trial court committed an abuse of discretion in finding that both parties are capable of financially supporting the [] Child and providing appropriate childcare for the [] Child, when the evidence and testimony of record does not support the same?

II.    Whether the trial court committed an abuse of discretion in finding that the overall quality of life for the Child would not

- 12 -

be enhanced [by relocation], when the evidence and testimony of record does not support the same?

III. Whether the trial court committed an abuse of discretion in finding that Father's admitted drug use does not pose a danger to the Child, when the evidence and testimony of record does not support such a finding?

IV. Whether the trial court committed an abuse of discretion in finding that Father is an active and involved Father, and that [the court] would consider a different outcome if Father was not so involved in the Child's life and so closely bonded with the Child, when the evidence and testimony of record does not support su[c]h a finding?

V. Whether the trial court committed an abuse of discretion in finding that the [] Child can maintain relationships with Mother's family through vacations and family trips, when the evidence and testimony of record does not support such a finding?

VI. Whether the trial court committed an abuse of discretion in finding that the Child is established in her current school district and remaining in such favors the Child, when the evidence and testimony of record does not support such a finding?

VII. Whether the trial court committed an abuse of discretion in finding that [] Mother did not manifest her intent to relocate upon moving to Pittsburgh, and that she is not struggling financially, when the evidence and testimony of record does not support such a finding?

Mother's Brief at 8-9 (some punctuation and capitalization modified).

Although Mother raises numerous issues, each is closely related and challenges the trial court's factual findings in support of the custody order. Accordingly, we address Mother's issues together.

Mother claims the trial court made factual findings that are contrary to the record and an abuse of discretion in denying her relocation petition. ***See***

Mother's Brief at 15-22.[11]   Mother initially argues that the "record …

unequivocally supports the conclusion that Father is not capable of financially

supporting his household or providing appropriate care for the Child." *Id.* at

15; *see also id.* at 16 ("The trial court's conclusion that Father is capable of

supporting himself and the Child is flatly unreasonable.").   *Cf.* Trial Court

Opinion, 10/24/24, at 10, 11 (trial court finding that both parties are "capable

of financially supporting Child" and "available to care for Child around their

work schedules").   Mother points out that at the custody trial, Father 1)

"testified that he relies entirely on outside sources for all of his transportation

needs"; and 2) resides with Paternal Grandmother, who "help[s] pay

[Father's] household bills."  Mother's Brief at 15, 16.

Mother further contends the record "unequivocally supports the

conclusion that Father's regular illegal drug use does put the Child at

substantial risk of harm," contrary to the trial court's finding that Father's

marijuana use poses no danger to Child.  *Id.* at 16 (emphasis omitted; some

capitalization modified).  *Cf.* Trial Court Opinion, 10/24/24, at 12 (trial court

stating it did "not find that Father's [marijuana] use poses a danger to Child.").

Mother asserts the trial court erred in "fail[ing] to give 'weighted

consideration' to" this factor, which implicates Child's safety, in violation of

the Act's mandate.  Mother's Brief at 17 (quoting 23 Pa.C.S.A. § 5328(a),

_____

[11] Father, who proceeded *pro se* throughout the litigation, did not file an appellate brief.

which we discuss *infra*). Mother points out that at the custody trial, Father testified "a) he smokes marijuana at least 5 times per week, b) he does not possess a medical marijuana license, [and] c) [he] smokes marijuana while exercising custody" of Child. *Id.* According to Mother, "[i]n finding that Father's admitted drug use does not pose a danger to the Child, the trial court could not have made a further departure from the 'best interest of the child' standard [applicable] in all custody cases." *Id.*

Mother next argues that the record "does not support the [trial court's] conclusion that Father is an active and involved [parent], and as such[,] does not support the well-established 'best interest of the child' standard." *Id.* at 18 (emphasis omitted; some capitalization modified). *Cf.* Trial Court Opinion, 10/24/24, at 12 (the trial court finding that "[w]hile Mother has been the primary caregiver, Father is an active and involved parent."). Mother points out that at the custody trial, "Father did not offer any supporting documentation tending to prove his involvement in [] [C]hild's care, school, and activities." Mother's Brief at 18. Mother emphasizes that she has always been Child's primary caregiver. *Id.* at 18-19. According to Mother, "Father can continue to participate minimally" in Child's care, if Child relocates, "from any locale, including suburban New York City, where the Child was born and raised for the first half of her life." *Id.* at 19.

Finally, Mother claims the trial court's following factual findings are all contrary to the record, and constitute an abuse of discretion:

- "[T]he overall quality of life for the [C]hild would not be enhanced" if the trial court granted the relocation petition. *Id.* at 15. *Cf.* Trial Court Opinion, 10/24/24, at 15 ("The overall quality of life for Child would not be enhanced [by relocation], when weighed against the disruption to her continuity and stability.").

- "[T]hat the Child can maintain relationships with her family through travel" and family trips. Mother's Brief at 19; *see also id.* (pointing out that at the custody trial, "the parties and the Child all testified that they do not travel much. Father testified that he does not possess a valid drivers' license and that he relies on … [others] for all his transportation needs. As such, the burden of maintaining familial relationships would rest solely on Mother's shoulders."). *Cf.* Trial Court Opinion, 10/24/24, at 12 (trial court finding that "Child is able to maintain [her] relationships" with Mother's family "through vacation and holiday visits.").

- Child "is established in her current school district and remaining in such favors the Child." Mother's Brief at 20; *see also id.* (maintaining the trial court erred in failing to query Child, during her *in camera* interview, regarding several relevant considerations, including Child's 1) "relationships with her teachers" at her current school; 2) "desire to achieve positive marks" in school; and 3) "interest or lack thereof in relocating to New York."). *Cf.* Trial Court Opinion, 10/24/24, at 9 (trial court finding that Child "is established at her current school district.").

- Mother "is not struggling financially," and she "failed to manifest her intent to relocate back to suburban New York at the outset of the parties' move to Butler County." Mother's Brief at 21; *see also id.* at 22 (asserting Mother testified at the custody trial that she was having "continued difficulty in maintaining [her] household in its current state on a single income."). *Cf.* Trial Court Opinion, 10/24/24, at 15 (trial court stating that "[t]here is no indication that Mother is struggling financially, except for her displeasure with the increased cost of housing."), 16 (finding that "Mother did not manifest any clear intention to return to New York at the time of the [family's prior] relocation to Pennsylvania.").

We review custody orders "for a gross abuse of discretion." *Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) (citation omitted); *see also R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019) (an appellate court will

not find an abuse of discretion "merely because [it] would have reached a different conclusion." (citation omitted)); ***M.A.T. v. G.S.T.***, 989 A.2d 11, 18 (Pa. Super. 2010) (*en banc*) (stating that to constitute an abuse of discretion, a trial court's ruling must be "manifestly unreasonable" as shown by evidence of record). In conducting this review, an

> appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (citation, ellipses, and brackets omitted).

> This Court
>
> consistently ha[s] held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge[,] who has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.T. v. L.S.***, 118

- 17 -

A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). Moreover, the "parties cannot dictate the amount of weight the trial court places on evidence." **A.V.**, 87 A.3d at 820 (citation omitted).

"The paramount concern in child custody cases is the best interests of the child." **C.G. v. J.H.**, 193 A.3d 891, 909 (Pa. 2018); **see also** 23 Pa.C.S.A. §§ 5328, 5338. "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

Upon petition, a trial court may modify an existing custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338(a). Section 5328(a) of the Act sets forth a non-exclusive list of factors (custody factors) that a court must consider before making any custody determination:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party[12] is more likely to encourage and permit frequent and continuing contact between the child and another party.

---

[12] We are mindful that in any child custody action between parents, the Act mandates that "there shall be no presumption that custody should be awarded to a particular parent." 23 Pa.C.S.A. § 5327(a); **see also id.** § 5328(b) (in making any custody determination, there shall be no preference based upon gender).

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.[13]

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

_____

[13] Concerning factor (a)(7), this Court has stated that

[t]he weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Moreover, as children grow older, more weight must be given to the preference of the child. As this Court has recently reaffirmed, where the households of both parents were equally suitable, a child's preference to live with one parent could not but tip the evidentiary scale in favor of that parent.

*E.B.*, 209 A.3d at 468 (quoting *B.C.S. v. J.A.S.*, 994 A.2d 600, 604 (Pa. Super. 2010)).

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a) (footnotes added); *see also J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) ("All of the [best interest] factors … are required to be considered by the trial court when entering a custody order." (emphasis omitted)). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (citation omitted).

In a custody case where a party has petitioned to relocate with a child, Section 5337(h) of the Act requires the trial court to additionally "consider the

following factors, giving weighted consideration to those factors which affect the safety of the child:"[14]

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.

---

[14] We hereinafter collectively refer to the Section 5337(h) factors as the "relocation factors," and observe that "[s]everal of the [relocation] factors … are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (citation omitted).

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); *see also E.D. v. M.P.*, 33 A.3d 73, 81 (Pa. Super. 2011) (stating a trial court must consider all of the relocation factors).

Under the Act, the "party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)." 23 Pa.C.S.A. § 5337(i)(1); *see also id.* § 5337(i)(2) ("Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation."). We have previously explained that "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case by case basis." *Ketterer*, 902 A.2d at 539 (citations and brackets omitted).

Finally, Section 5323(d) of the Act provides that a trial court "shall delineate the reasons for its decision" in making any custody award. 23 Pa.C.S.A. § 5323(d). "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *A.V.*, 87 A.3d at 823 (citation and quotation marks omitted).

Instantly, the trial court addressed each of the custody factors and relocation factors in its thorough memorandum opinion accompanying the custody order, as follows:

**CUSTODY FACTORS**

(1) Which party is more likely to encourage and permit contact between the Child and another party.

The trial court found this factor is neutral. Memorandum Opinion/Findings of Fact, 8/9/24, at 8. Specifically, the court stated that

> [b]esides the brief period when Father withheld custody [of Child from Mother] for two weeks, neither party discourages contact between Child and the other party. Father's behavior, while inappropriate, occurred prior to the custody litigation, when emotions were running high and there was no court order in effect. Either party, if granted primary custody, would allow regular contact between Child and the other party.

*Id.*

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the Child or an abused party, and which party can better provide adequate physical safeguards and supervision of the Child.

With respect to this factor, the trial court found as follows:

> There are no allegations of abuse. Father alleges that a minor physical conflict occurred between Mother and her [teenage] daughter [from a previous relationship.] Father's accounts of Mother being intoxicated in the presence of the [C]hildren were credible. However, Father has not resided with Mother since 2022. The [trial c]ourt does not find a risk of harm to Child at this time.

*Id.*

(3) The parental duties performed by each party on behalf of the Child.

The trial court found this factor was neutral, determining that

[b]oth parties sufficiently perform the regular parental duties for Child. Mother historically has been the primary caregiver, while Father has always been involved in the daily caregiving duties. Mother takes the lead in coordinating Child's education and medical care, and she copies Father on school communications to ensure that he is informed.

*Id.*; *see also id.* at 16 ("Mother and Father are both capable parents who have raised [Child] well.").

(4) The need for stability and continuity in the Child's education, family life and community life.

The trial court found this factor favored Father, reasoning as follows:

[Child] is established at her current school district. The continuity in her education and community life favors remaining in her environment. [Child] would benefit from [Mother's] family support in New York, but the stability in [Child's] relationship with Father would be disrupted. If remaining in Pennsylvania, Child's stability and continuity favor a similar custody arrangement to the one currently in place, with additional time for Father[,] to maximize Child's time spent with both parties.

*Id.* at 9. The trial court additionally found that

uprooting [Child] at this time involves unnecessary risk to her wellbeing. The potential benefits to Child in relocating to New York are not compelling enough to outweigh the disruption to Child's stability and continuity in her education, community, and relationship with Father.

*Id.* at 16 (formatting modified).

(5) The availability of extended family.

With respect to this factor, the trial court found that

Paternal Grandmother resides with Father. Otherwise, most of Child's extended family resides in Blauvelt, New York. This factor favors Mother's proposed relocation to New York. If both parties

- 24 -

reside in Pennsylvania, this factor is less relevant due to limited extended family in the area.

*Id.* at 9.

(6) The Child's sibling relationships.

The trial court found that this factor favored Mother and observed that

[Child's] oldest sister, Ma[.], remained in New York when Mother moved to Pennsylvania. The middle sister, Me[.], resides with Mother. There is a significant age difference between Child her sisters, with Ma[.] being twenty-four and Me[.] being fifteen. Me[.] does not visit Father along with [Child], but [Child] is afforded substantial time with Me[.,] when in Mother's custody.

*Id.*

(7) The well-reasoned preference of the Child, based on the Child's maturity and judgment.

The trial court found that this factor favored Father. *Id.* Specifically, the court stated that it

met with [the eight-year old Child] in chambers and found her to be pleasant and well-spoken. [**Child**] **desires to see both parents as much as possible and *remain in her current environment*.** There was no evidence of coaching by either party, and [Child] is fortunately unaware of the extent of the conflict between her parents. [Child's] well-reasoned preference shall be afforded the appropriate weight, considering her maturity and judgment.

*Id.* (emphasis added); *see also E.B.*, 209 A.3d at 468 ("[W]here the households of both parents [are] equally suitable, a child's preference to live with one parent could not but tip the evidentiary scale in favor of that parent.").

(8) The attempts of a parent to turn the Child against the other parent.

- 25 -

The trial court stated this factor is inapplicable, based on its finding that "[t]here was no credible evidence presented of attempts by either party to turn Child against the other party." Memorandum Opinion/Findings of Fact, 8/9/24, at 10.

(9) Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the Child adequate for the Child's emotional needs.

The trial court found this factor is neutral and observed that "[b]oth parties provide for Child's emotional needs in their own ways." *Id.*

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child.

The trial court found this factor favored Mother, stating as follows:

Mother has been more proactive in attending to Child's daily needs, but there was no credible evidence presented indicating that Father is incapable of performing similar duties given the opportunity. Both parties regularly attend school meetings and functions. They are both capable of financially supporting Child. Father's driver's license is suspended, but he has access to transportation through Paternal Grandmother. As Mother has already demonstrated her ability to be the primary caregiver, this factor favors Mother.

*Id.*

(11) The proximity of the residences of the parties.

The trial court found this factor favored Father. *Id.* at 11. Specifically, the court reasoned that

[t]he close proximity of the parties' current residences[, which are both in Cranberry Township,] allows for both parents to have substantial custody time. Mother's proposed relocation to [Blauvelt,] New York[, which is over 300 miles away from the parties' current residences,] would prevent Child from having the regular time with Father that she currently enjoys.

- 26 -

*Id.*

(12) Each party's availability to care for the Child or ability to make appropriate childcare arrangements.

> The trial court found this factor was neutral, reasoning as follows:
>
> Both parties are available to care for Child around their work schedules and make appropriate child-care arrangements when necessary. Father works the overnight shift from 10:00 p.m. until 7:00 a.m. Paternal Grandmother moved in with Father to help him with childcare. Father sleeps during the day, but is available to get Child to and from [her school] bus stop. Mother does not have a support system in the area, but is available for Child due to her working from home.

*Id.* The trial court additionally found that "[t]here is no credible evidence indicating that Father is not capable of providing structure during the school week. Now that Paternal Grandmother resides with Father, he has additional support to accommodate his work schedule." *Id.* at 16-17.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.

> The trial court found this factor was neutral, stating as follows:
>
> The level of conflict is relatively low. The relocation issue has created an impasse, but the parties are generally able to coordinate custody issues without incident. Mother and Father have done well to isolate Child from the conflict.

*Id.* at 11; *see also id.* at 16 ("The parties are commended for their ability to shield [Child] from the conflict, in spite of the circumstances surrounding their separation.").[15]

(14) The history of drug or alcohol abuse of a party or a member of a party's household.

> The trial court found as follows with respect to this factor:
>
> Mother voluntarily sought treatment for problems related to alcohol. She continues to consume alcohol in moderation. Father asserts that Mother continues to have a drinking problem, but he failed to provide credible evidence from the time when he moved out of the family residence. Father regularly uses marijuana, but he does not possess a medical marijuana [license]. The [trial c]ourt does not find that Father's [marijuana] use poses a danger to Child.

*Id.* at 11-12.

(15) The mental and physical condition of a party or member of a party's household.

> Mother [testified that she] sought mental health treatment as part of her [rehabilitation] treatment for alcohol. Her mental health has improved to the extent that she does not require regular therapy, but she still engages in therapy on an as-needed basis.

*Id.* at 12.

(16) Any other relevant factor.

The trial court found that "[t]here are no other relevant factors of evidentiary significance." *Id.*

**RELOCATION FACTORS**

_____

[15] Mother testified that the parties' relationship ended when she discovered Father's relationship with another woman. N.T., 8/5/24, at 111.

(1) The nature, quality, extent of involvement and duration of the Child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the Child's life.

The trial court found as follows with respect to this factor:

[Child] is closely bonded with both parents. While Mother has been the primary caregiver, Father is an active and involved parent. If Child moves to New York, her relationship with Father will be substantially disrupted and negatively impacted. To a lesser extent, Child's relationship with Paternal Grandmother would also be affected, as Paternal Grandmother has become a consistent figure in Child's life since moving in with Father.

It is acknowledged that Child would benefit from the support of Mother's extended family, as well as [Child's] older sister, in New York. However, Child is able to maintain those relationships through vacation and holiday visits. It is in the best interest of Child to maintain structure, stability, and continuity in her life, especially at this time when Child is adapting to li[f]e with separated parents.

*Id.* at 12-13; *see also id.* at 16 ("If Father was not so involved in Child's life,

and if Child was not so closely bonded with Father, then the [c]ourt would be

more inclined to grant Mother's [relocation petition,] because Mother has been

the primary caregiver.").

(2) The age, developmental stage, needs of the Child and the likely impact the relocation will have on the Child's physical, educational, and emotional development.

The trial court found this factor favored Father. *Id.* at 13. The trial

court stated that

[Child] is happy and adjusting well to the new family dynamic. The proposed relocation would necessitate a change in [Child's] school district and disruption of Child's friendships. Moving Child away from Father during her formative years would not be in the best interest of her emotional development. The stability and

- 29 -

continuity currently existing serve as protective factors in maintaining Child's healthy development.

*Id.*

(3) The feasibility of preserving the relationship between the nonrelocating party and the Child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

The trial court found this factor favored Father, stating as follows:

Mother proposes that Father will have at least one custodial weekend per month and two two-week custodial periods during the summer, if she is permitted to move [with] Child to New York. Mother also proposes that Father will be able to visit Child in New York at any time, and that Father will have additional holiday custody time. Even if Father were granted custody [of Child] for the entire summer, the distance involved would cause Father's custodial time during the school year to be significantly reduced from the regular contact that Child currently enjoys. The nature and quality of Child's relationship with Father would be negatively affected.

*Id.*

(4) The Child's preference, taking into consideration the age and maturity of the Child.

The trial court found this factor favored Father. *Id.* at 14. Specifically, the trial court observed that "[Child] expressed well-reasoned preference, considering her age and maturity, to remain in her current environment, as discussed under factor 7 in the [custody factors] analysis." *Id.*

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the Child and the other party.

The trial court found that this factor was neutral. *Id.* The court reasoned that

[b]oth parents are sufficiently supportive of Child's relationship with the other party, as discussed under factors 1 and 8 in the [custody factors'] analysis. There is not an established pattern of conduct by either party to thwart the relationship of the Child and the other party.

*Id.*

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

The trial court found as follows regarding this factor:

Mother would benefit from the emotional support of her family in New York. Mother's desire to be close to family is sincere and reasonable in light of the emotional struggles she is experiencing related to the parties' separation. Mother also believes that New York provides more opportunity to advance in her career. While the [trial c]ourt credits Mother with the ambition to provide for her family, the [c]ourt notes that Mother moved to Pennsylvania because of the career opportunity afforded to her. There is no indication that Mother is struggling financially, except for her displeasure with the increased cost of housing. Mother acknowledged that her proposed location in New York has a higher cost of living than her current location.

*Id.*

(7) Whether the relocation will enhance the general quality of life for the Child, including, but not limited to, financial or emotional benefit or educational opportunity.

The trial court found this factor favored Father, stating as follows:

[Child] would benefit from the emotional support of Mother's extended family in New York, and those relationships would have the opportunity to thrive with more frequent contact. Mother's documentation of [Child's] proposed new school district being more diverse and providing better education was unconvincing. The [trial c]ourt finds that the educational opportunities are generally the same in [Child's] current school district. Mother's assertion that Blauvelt provides better career opportunities for Child because of Mother's family connections in the community is

reasonable, but also speculative, and is not a determining factor. The overall quality of life for Child would not be enhanced [by relocation], when weighed against the disruption to her continuity and stability.

*Id.* at 15.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

The trial court found that this factor was neutral, reasoning as follows:

Mother's motivation to have the support of extended family and provide a better life for Child is sincere. Father's motivation to maintain his regular involvement in Child's life and protect her stability is also sincere.

*Id.*; *see also id.* at 16 (trial court stating it did "not find that Mother is motivated by any ill-will to move Child away from Father.").

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the Child or an abused party.

The trial court found this factor was inapplicable, stating that "[t]here are no allegations of abuse, as discussed under factor 2 in the [custody factors] analysis." *Id.* at 15.

(10) Any other factor affecting the best interest of the Child.

The trial court found this factor was inapplicable, stating "[t]here are no other relevant factors of evidentiary significance." *Id.*

Upon review, we conclude that the trial court's findings and determinations are supported by competent evidence in the record, contrary to Mother's claims. Mother essentially invites this Court to substitute our judgment, based on a cold record, for that of the trial court, re-weigh

evidence, and/or re-assess witness credibility. This we cannot do. ***See A.V.***, 87 A.3d at 820; ***see also C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (stating that this Court's "role does not include making independent factual determinations." (citation omitted)).

The record supports the trial court's conclusion that "Mother failed to meet her burden of establishing that the relocation would serve the best interests of Child." Memorandum Opinion/Findings of Fact, 8/9/24, at 16. This Court has stated that "trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents[.]" ***S.C.B. v. J.S.B.***, 218 A.3d 905, 916 (Pa. Super. 2019). The record supports the trial court's finding that if the court granted Mother's relocation petition, and permitted her to move with Child over 300 miles away from Father, this would present a significant barrier to the relationship between Child and Father, and be contrary to Child's best interests. ***See*** Memorandum Opinion/Findings of Fact, 8/9/24, at 11, 16. Moreover, as explained above, relocation would be contrary to Child's express wishes. ***See Ketterer***, 902 A.2d at 540 (stating that "[t]he weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears."). ***But see also id.*** at 539 ("The fact that a move of a considerable distance will increase the cost and logistical problems of maintaining contact between the noncustodial parent and child will not necessarily preclude

relocation **when other factors militate in favor of it**." (emphasis added; citation omitted)).

After careful review of the record, and giving appropriate deference to the trial court's credibility determinations and its weighing of the evidence, we discern no error of law or gross abuse of the court's discretion. Even if we disagreed with the trial court's ruling, we have long held that "an abuse of discretion is not merely an error of judgment." *Johnson v. Johnson*, 222 A.3d 787, 789 (Pa. Super. 2019) (citation omitted).

Based upon the foregoing, we affirm the trial court's custody order denying Mother's relocation petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/4/2025